Argued October 16; affirmed December 9, 1030.

# CITY OF EUGENE *v.* KEENEY ET AL.

### (293 P. 924)

*S. M. Calkins* of Eugene for appellant.

*H. E. Slattery* of Eugene (Alta King of Eugene on the brief) for respondent.

BELT, J. The City of Eugene instituted this suit for the purpose of determining whether certain real property owned by it is exempt from taxation. The facts out of which this controversy arose are interesting. In 1925, and for some years prior thereto, the Oregon and California Railroad Company owned a tract of land, part of which was within the corporate limits of the town of Springfield. It was generally expected by the citizens of that community that the railroad company would use such site for its terminal yards and car shops. However, the City of Eugene desired the benefits to be derived from such industrial development and immediately took steps to obtain title to land which it considered would be a more suitable railroad terminal. Pursuant, no doubt, to such plan, the charter of the City of Eugene was amended in

August, 1925, to authorize such municipalty "to purchase * * * real property * * * within and without the territorial limits of the city for the municipal railway terminals, municipal belt line railway, municipal parks and for any other municipal purposes," and to issue bonds not in excess of $175,000 to accomplish such purposes. A corporation called the Eugene Terminal Company was organized for the purpose of acquiring title to land for and on behalf of the city, such land to be offered as a site for terminals and car shops of the Southern Pacific Company. The Eugene Terminal Company, having obtained for the city the necessary amount of land, exchanged it for the tract owned by the Oregon and California Railroad Company and originally intended to be used for its terminal yards. Bonds having been issued and sold, the City of Eugene, on September 10, 1925, entered into a contract with the Eugene Terminal Company to purchase for $175,000 the land which had been exchanged by the Railroad Company; $170,000 was paid upon execution of the contract and the balance of the purchase price was paid upon delivery of the deed which was on June 20, 1926. The deed was not filed for record, however, until September 29, 1926. Prior to the execution of this deed, the city, on November 25, 1920, entered into a contract with the town of Springfield whereby it leased to the latter municipal corporation for a period of forty-nine years, at a nominal rental of $1.00 per annum, the property it had purchased with the proceeds of this bond issue, reciting in the instrument that the property was "to be used and devoted to any purposes desired by the said lessee consistent with the rights and powers granted by the charter amendment above set forth." In this lease the city reserved a five-acre tract of land to be devoted to a municipal

park, "for the use of the general public, particularly the town of Springfield and the city of Eugene." It was also recited in the contract of lease that the City of Eugene entered into such agreement "in order that the tract be maintained and kept intact for future uses and purposes and in the meantime be applied to such uses and purposes as shall further the interests and promote the economic and esthetic progress of the general community composed of the town of Springfield and the City of Eugene." Thus was oil poured upon the troubled waters.

After Springfield acquired interest in this 247 acres of land, 56.3 acres of which were within the corporate limits of the city, its common council purported to authorize the execution of a lease, on December 22, 1926, to S. J. James, for a ten-acre tract of the land, upon which he agreed to erect a tannery. On March 11, 1929, this lease was cancelled by the city for breach of contract.

In 1927, an agreement was also made by the city of Springfield with C. I. Gorrie, Jr., granting him the right to use a part of the land for crops or grazing purposes in consideration of a stipulated rental. It is noteworthy that it is expressly provided in this agreement that "The Industrial Park Committee" which was appointed by the common council had the right of "showing this land to prospective industrial investors."

On April 16, 1929, the city of Springfield entered into an agreement with the Eckerson Flying Service, Inc., whereby this company was granted, for a period of five years, an exclusive right to use a portion of the land for the purpose of conducting an aviation school. The land was also to be used as a municipal airport.

The county assessor, being of the opinion that the property, with the exception of the five-acre tract reserved for a municipal park, was not exempt from taxation, assessed it, in March, 1926, to the Oregon and California Railroad Company, since its deed to the Eugene Terminal Company was not filed for record until July 24, 1926. In each of the following years the property has been assessed to the City of Eugene. Hence this suit for injunctive relief.

■■ It is a well established general rule that the property of a municipal corporation used for public or corporate purposes is exempt from taxation by the state or county in which it is situated whether the property is within or without the municipality by which it is owned. See cases collated in exhaustive note 3 A. L. R. 1439. Where such public corporations are involved, exemption is the rule and taxation the exception. As to private ownership of property, the rule is reversed.

■ However, whether property owned by a municipal corporation is or is not subject to taxation depends upon constitutional or statutory provisions. Exemption is based upon the public policy of the state, whether expressed in its constitution or legislative enactments. The right of the legislature to make exemptions in favor of subordinate branches of the government is a necessary adjunct of the right to tax.

■■ In some jurisdictions the test of exemption is the ownership of the property; in others the test seems to be the use of the property; while in others it is both ownership and use: Cooley on Taxation (4th Ed.), § 690. While there are a few isolated cases to the contrary, the authorities are quite generally agreed that, if the property owned by a municipal corporation is devoted to a public use, the mere fact that it is located beyond

its corporate limits or that it is within the boundaries of another municipality is immaterial. The argument that such rule might spell disaster for some municipality whose property had thus been withdrawn from the tax rolls is, in our opinion, not sound. The ownership of municipal property devoted to a public use, although located in another city, is, indeed, limited. Courts cannot be concerned with highly improbable or conjectural situations. The same contention was made in *Town of Hamden v. City of New Haven,* 91, Conn. 589 (101 Atl. 11, 3 A. L. R. 1435), and held to be untenable. When the abuse which counsel anticipates occurs, it will be time for legislative action.

■ Neither can we agree with counsel for defendants that statutory provisions exempting from taxation property owned by a municipal corporation should be strictly construed. As stated in Cooley on Taxation (4th Ed.), § 673:

" * * * the better rule is that strict construction of exemption statutes applies to exemptions of property held in private ownership but not to exemptions of public property."

With these general principles in mind, we turn to Or. L., § 4235, as amended by chapter 270, Laws 1925, which provides as follows:

"The following property shall be exempt from taxation: * * * 2. All public or corporate property of the several * * * cities * * * used or intended for corporate purposes, except lands belonging to such public corporations held under a contract for the purchase thereof."

■ It is plain from a consideration of the above statute that the exemption from taxation was not made to depend solely upon ownership of the property. Some significance and meaning must be given to the words, "used or intended for corporate purposes." It is also

clear that if the property owned by a municipality is not used or intended to be used for a corporate purpose it is subject to taxation. This plain implication follows by reason of the fact that the legislature specifically provided in what instances municipally owned property should be exempt from taxation. The decision of the case, therefore, hinges upon the question whether the City of Eugene has used or intends to use this property for corporate purposes. In view of the record before us, we must answer this question in the negative. The plaintiff having leased this property to the town of Springfield for a period of 49 years, it is hardly reasonable to assume that the City of Eugene intends to devote this property to a public use. It has virtually placed the land beyond its control or management, notwithstanding it still retains the legal title thereto. Springfield has a "Free Industrial Site," but we cannot say that the tract is being used in keeping with the intendment of the charter amendment authorizing the bond issue. Certainly Eugene is not so using it—nor is there reasonable inference which we can deduce from the record that the plaintiff intends so to use it.

We quite agree that, under the statutes, it is not necessary for a city, in order to claim exemption, to immediately devote the property to a public or corporate use. A municipality may reasonably provide for the future. Neither is it for this court to impugn the motives of the common council of Eugene. Our conclusion is based upon what the solemn records of the city declare. In other words, we think it affirmatively appears that the plaintiff has abandoned any intention of devoting this property to a public use. The reservation in the lease of a five-acre tract for a municipal park is highly significant. The remainder, out of a spirit of fairness, was leased to Springfield to compen-

sate it for the industrial loss sustained in being deprived of the Southern Pacific car shops and terminals. If, as counsel for plaintiff suggests, the two cities will in the near future be merged and the property devoted to municipal purposes, it will then be time to claim exemption from taxation.

Plaintiff strongly relies on *Portland v. Welch,* 126 Or. 293 (269 P. 868). In that case the property was purchased by the city of Portland for the purpose of establishing a municipal park. Most of the property acquired was used for that purpose, but a portion thereof was deemed not adaptable for park purposes and, therefore, was platted into lots by the city and offered for sale. The primary purpose of the city had been accomplished and this court properly held that the disposal of the remainder or surplus land was merely incidental to the main object of the city and was not foreign to its corporate purposes. The facts are wholly dissimilar to those involved in the case at bar. If but one sentence in the opinion were read without regard to its context, it might lead to the conclusion contended for by plaintiff, but, considered in its entirety it does not warrant such construction. The court there said, referring to the property held by the city for sale, that it was "used or intended for corporate purposes." We think the holding in the Welch case is not inconsistent with the conclusion here reached.

There are many other interesting and difficult questions presented by counsel in their briefs, but we have been content to discuss only those which are pertinent under the issues.

The decree of the lower court, dismissing the suit of the plaintiff for the reason that the property in question is subject to taxation, is affirmed.