Argued September 11; affirmed November 13, 1935

## CITY OF PORTLAND *v.* MULTNOMAH COUNTY ET AL.

(50 P. (2d) 1145)

*Frank S. Sever,* Deputy District Attorney, of Portland (James R. Bain, District Attorney, of Portland, on the brief), for appellants.

*Frank S. Grant,* City Attorney, of Portland (Willametta McElroy, Deputy City Attorney, of Portland, on the brief), for respondent.

KELLY, J. Plaintiff, the City of Portland, Oregon, is now and ever since August 14, 1874, has been the owner in fee simple of lot 6, block 50, Portland, Multnomah county, state of Oregon. From 1874 until 1919, the building on the property was used to house a company of the city's fire department. In September, 1919, the use of said property for said purpose was discontinued and ever since said time a portion of the building has been rented for a retail store.

On the 1st day of November, 1929, plaintiff leased said premises to one J. C. Green for a period of two years from said date for a total rental for said term of fifteen thousand six hundred dollars ($15,600); and on the same date the said lessee J. C. Green leased to the plaintiff for a like term a portion of said premises, to-wit: the upper floor and stairway thereof for a rental for said term of four thousand and eighty dollars ($4,080). After the expiration of said lease, said J. C. Green continued to occupy a portion of said premises, to-wit: the lower floor thereof for market purposes as a tenant from month to month until the 30th day of April, 1932, paying for said premises a total rental for said period the sum of two thousand eight hundred and eighty dollars ($2,880).

Upon the 1st day of May, 1932, the plaintiff leased to said J. C. Green for a period of two years the lower floor of said premises for a monthly rental of three hundred dollars ($300) per month, which said lease was again renewed at the expiration of said term for a like period of two years, expiring April 30, 1936, the rental reserved therein to be paid by said tenant being the sum of two hundred and fifty dollars ($250) per month.

After the execution of said leases on November 21, 1929, the plaintiff, City of Portland, occupied the upper floor and stairways of said premises for both a comfort station and public employment bureau until June, 1931, and continued to occupy a portion of said upper floor and the stairways therein until the 31st day of March, 1932, as a public comfort station.

For the year 1931, the defendant, Hiram U. Welch, as county assessor of Multnomah county, assessed the land and improvements comprising said premises at three-fifths of their full assessable value, assessing the land at thirty-nine thousand dollars ($39,000) and the improvements at thirty-one hundred dollars ($3,100) and noting on the assessment roll that said assessment was made upon a basis of three fifths of the assessable value of said property. For the year 1932, and subsequent, the land was assessed at its full assessable value as follows: Land, sixty-five thousand dollars ($65,000); improvements, four thousand nine hundred and ten dollars ($4,910).

■ Based upon the foregoing facts, which are stipulated, plaintiff contends that the taxes attempted to be levied by Multnomah county and to be apportioned and assessed against said property are unlawful, invalid and uncollectible, while defendants insist that said taxes are lawful, valid and collectible.

Section 69-104, Oregon Code 1930, as amended by chapter 358, Oregon Laws 1931, among other things, provides:

"The following property shall be exempt from taxation; * * *

2. All public or corporate property of the several * * * cities * * * and all other municipal corporations in this state used or intended for corporate

purposes, except lands belonging to such public corporations held under a contract for the purchase thereof.''

A construction of the above quoted subdivision 2 of section 69-104, as amended, involves a consideration of the meaning of the words public and corporate as modifying or qualifying property; and of the word corporate as applied to the word purposes.

This court, speaking through Mr. Justice HARRIS, has said that in its broadest sense, all property owned by a city is public property.

''A city may control property used in a purely governmental activity or it may own property used in what has been termed a 'private municipal activity', but in either event the property is public property. All municipal property may within certain constitutional limitations be controlled by the state; and the right of control is lesser or greater usually depending upon whether the property is or is not used by the city in the performance of a strictly governmental duty devolved upon the city as an agency of the state; but whether protected by greater or by lesser constitutional limitations, property of both classes is nevertheless to be deemed public, if that term is employed in its broadest and not in its restricted sense.'' (Citing authorities) *Kinney v. Astoria et al.,* 108 Or. 514, 530 (217 P. 840); *Seafeldt v. Port of Astoria,* 141 Or. 418, 422, (16 P. (2d) 943).

''When they are used in reference to property, the terms 'private' or 'corporate' are employed in contradiction to the word 'public'.'' Ballentine's Law Dict. p. 291, citing *Trustees of the Academy of Richmond County v. City Council of Augusta,* 90 Ga. 634 (20 L. R. A. 151, 158, 17 S. E. 61), which in turn cites *Trustees of the Academy of Richmond County v. Bohler,* 80 Ga. 159, 163 (7 S. E. 633).

As stated by Mr. Justice RAND:

''Where a statute defines as exempt from taxation all public or corporate property of a municipality, using

the words 'public' and 'corporate' both, it would seem that it was intended to include all property of every nature belonging to the city, for if the word 'public' as applied to property, was intended to include only such property as was held in a governmental capacity, that is for a public use, then it would seem that all other property of the municipality and belonging to it would be regarded as corporate property." *Portland v. Welch,* 126 Or. 293, 269 P. 868.

The supreme court of the United States has used the following oft-quoted language with reference to the term, corporate purpose,

"* * * We think it may be safely said that, as a general rule, a corporate purpose must be some purpose which is germane to the general scope of the object for which the corporation was created." *Weightman v. Clark,* 103 U. S. 256 (26 L. Ed. 392).

The powers granted by its charter afford an index to the city's corporate purpose. Section 2 of the charter of the City of Portland, among other things, provides that the city "may purchase, or acquire by the exercise of the right of eminent domain, receive and hold property, both real and personal, within or without said city for municipal purposes, and shall have the right of possession and control of all * * * buildings and property and of all tracts of land belonging to said city and other property which has been or may be hereafter dedicated or in any manner whatsoever obtained for public purposes of said city, and may lease, sell or dispose of the same for the benefit of the city; * * *."

In order to support the city's right to lease the property in suit, we need only to apply the construction of the above quoted provision of the charter, which limits and restricts the city's authority to lease property, to the leasing only of property obtained for or dedicated to public purposes of said city for the reason that, while

there are early cases holding that the use of property by a city for protection against fire is not a governmental use thereof, we hold, however, that using a building to house a company of the city's fire department is to devote said property to municipal, and dedicate it to public, purposes of said city. The property in suit having been so dedicated to public purposes, such property, under the above quoted express provision of the charter, may be leased by the city. There is authority sustaining the view that the general authority of a city justifies such leasing: *New Shoreham v. Ball,* 14 R. I. 566; *Bates v. Bassett,* 60 Vt. 530 (15 Atl. 200, 1 L. R. A. 166).

Each case involving the claim of exemption from taxation depends upon the statutory provisions applicable and the facts disclosed. In *Floyd v. Perrin,* 30 S. C. 1 (8 S. E. 14, 2 L. R. A. 242), we are told in the prevailing opinion, that,

"To understand what is meant by a corporate purpose, a distinction must be drawn between the powers of a corporation and the end and the purpose intended to be accomplished by it. * * * And also that * * * the corporate purpose must exist before a power can be granted to carry it out."

In the dissenting opinion, we are told that, "The purpose can only appear from the powers given". That was a case involving the question whether a township could be granted authority to subscribe to the capital stock of a railroad company. It is easily distinguishable from the case at bar for the reason that the corporate purposes of a city are much more extensive than those of a mere township. Moreover, this court is committed to the principle that a city may be authorized to construct and operate a railroad: *Churchill v. Grants Pass,* 70 Or. 283 (141 P. 164). The policy of such activity,

whether wise or unwise is to be determined by the legislature and not by the courts.

In the case at bar, our duty is to ascertain what is meant by the exemption clause sub judice. If a corporate purpose is only a governmental purpose, defendant's contention should be upheld and the property in suit should be subjected to taxation. If the term corporate purpose includes a purpose sought to be accomplished by the city in its proprietary capacity, the plaintiff's contention should be approved.

We think the term corporate purpose as applied to a city means any purpose for the accomplishment of which a valid power is granted by the charter or other legislative enactment. We hold that the hereinabove quoted charter provisions vest the City of Portland with authority to lease the property in suit and that, in leasing it, the city has made corporate use thereof.

There is nothing in the agreed statements of facts which discloses what use has been made of the upper floor and stairway of said building since March 31, 1932.

In plaintiff's brief, however, we find the following statement:

"In the instant case the City of Portland used the property in question exclusively for corporate purposes for more than forty-five years and for another thirteen years used a portion thereof for public purposes, it being only during the past three years that no part of the property has been used by the city."

The fact that the upper story of the premises has been vacant for the time stated does not deprive the property or the vacant portion of it of the character of corporate property used or intended for corporate purposes.

In *City of Eugene v. Kenney,* 134 Or. 393 (293 P. 924) we held that, inasmuch as the City of Eugene had

leased the property in suit to the town of Springfield for forty-nine years at a nominal rental of one dollar per year, the City of Eugene was not using it and we could not assume that in the future said city intended to make corporate use of it. The distinction between that case and the instant case is obvious. Here substantial remuneration is being received by the City of Portland as rental and the term of the lease, now effective, is but two years.

■ The decree of the circuit court is affirmed. The nature of the question involved, the state of the record and the character of the parties are such that neither party should recover costs or disbursements from the other, and it is so ordered.

ROSSMAN, J., not sitting.

———

BELT, J. (specially concurring): I concur in the affirmance of the decree for the reason that the defendant has failed to show an intention on the part of the city not to use the property in question for corporate purposes. The short term leases involved do not, in my opinion, indicate an abandonment of the property for public use: *City of Eugene v. Kenney,* 134 Or. 393 (293 P. 924), is clearly distinguishable from the case at bar.