Hart, J.,
 

 dissenting. The relator in his amended petition prayed that the respondent be required to levy and assess personal property taxes on all personal property located in Ohio and used by the Department of Liquor Control. The personal property under control of the Department of Liquor Control, consisting of liquors and store fixtures, is located in many counties and taxing subdivisions of the state of Ohio and is, if taxable, subject to a combined county return for taxation by the Tax Commissioner. See Sections 5370, 5372-1, 5376, 5378 and 5395, General Code. If this property is taxable, it is the clear statutory duty of the Tax Commissioner to see that a proper return is made to the various county auditors for that purpose, and to see that the assessment and collection of taxes are enforced. This procedure was followed by the commissioner in a similar situation which gave rise to the case
 
 *206
 
 of
 
 Hinde & Dauch Paper Co.
 
 v.
 
 Evatt, Tax Commr.,
 
 143 Ohio St., 307, 55 N. E. (2d), 129.
 

 The principal question here involved is whether this property is taxable. In my opinion the question is specifically answered, by Section 5328, General Code, which provides that “* * * All personal property located and used in business in this state
 
 * * *
 
 shall be subject to taxation.” See
 
 Hinde & Dauch Paper Co.
 
 v.
 
 Evatt, Tax Commr., supra.
 

 Section 5366, General Code, provides:
 

 “*
 
 *
 
 * ‘Taxpayer’ means
 
 any owner of taxable property
 
 and includes first, every person residing in, or incorporated or organized by or under the laws of this, state, * * * excepting, in each instance, those hereinafter expressly excluded * * ®. ‘Taxpayer’ excludes all individuals, partnerships, corporations, associations, and joint stock companies * * * in this title defined as financial institutions, as dealers in intangibles, as domestic insurance companies and as public utilities, respectively * * * .” (Italics supplied.)
 

 The rule of
 
 expressio unius esi exclusio alterius
 
 does not .apply here for the reason that the definition of “taxpayer” is followed by a statement of the persons who shall be excluded from the definition. This exception to the rule is operative where the section of the statute under consideration is followed by a section or a portion of the same section enumerating specific entities to which the statute is not applicable. 37 Ohio Jurisprudence, 557, 558, Section 296, and 783, 784, Section 455;
 
 Brenzinger
 
 v.
 
 American Exchange Bank of Duluth,
 
 19 C. C., 536, 10 C. D., 775, affirmed 66 Ohio St., 242, 64 N. E., 118. An exception in the statute excludes all other exceptions.
 
 City of Lima
 
 v.
 
 Cemetery Assn.,
 
 42 Ohio St., 128, 51 Am. Rep., 809. Since certain own
 
 *207
 
 ers of property are specifically excluded from the definition of “taxpayer” by Section 5366, General Code, all other owners of personal property are necessarily included in the definition.
 

 In the case of
 
 State of Ohio
 
 v.
 
 Helvering, Commr.,
 
 292 U. S., 360, 78 L. Ed., 1307, 54 S. Ct., 725, the United States Supreme Court had before it the question whether the Department of Liquor Control of Ohio was subject to federal taxation and the court was confronted with the problem of interpreting a section of the federal code and determining whether the word “person” used in the statute should be construed as meaning and including a partnership, association, company or corporation as well as a natural person. In that case Mr. Justice Sutherland, writing the opinion for the court, held that a state is a “person” within the meaning of the statute and concluded as follows: “We prefer, in the light of the foregoing examples, to place our ruling upon the broader ground that the state itself, when it becomes a dealer in intoxicating liquors, falls within the reach of the tax either as a ‘person’ under the statutory extension of that word to include a corporation, or as a ‘person’’ without regard to such extension.”
 

 Although a state may have certain immunities because of its sovereignty, it is, nevertheless, a “corporation” and may waive its sovereign rights through the action of its legislative branch. Judge Davis, in the case of
 
 Overholser
 
 v.
 
 National Home for Disabled Volunteer Soldiers;
 
 68 Ohio St., 236, at page 249, 67 N. E., 487, 96 Am. St. Rep., 658, 62 L. R. A., 936, quoting from Cooley on Torts, said:
 

 “Even the state or the general government may be guilty of individual wrongs; for, while each is a sovereignty, it is a corporation also, and as such capable of doing wrongful acts * * * . ”
 

 
 *208
 
 “A state is a corporation. It is a legal being, capable of transacting some kinds of business like a natural person, and such a being is a corporation.” 13 American Jurisprudence, 155, Section 3;
 
 State of Indiana
 
 v.
 
 Woram,
 
 6 Hill (N. Y.), 33, 40 Am. Dec., 378.
 

 “A state, as a political corporation, has the right * * * to institute a suit in any of Its courts, * * * whether it is required by its pecuniary interests or the general public welfare. It possesses this right both in its sovereign capacity and by virtue of its corporate rights.” 49 American Jurisprudence, 292, Section 80;
 
 State
 
 v.
 
 Ohio Oil Co.,
 
 150 Ind., 21, 49 N. E., 809, 47 L. R. A., 627.
 

 [furthermore, the Department of Liquor Control of the state of Ohio comes within the term of ‘
 
 ‘
 
 every person * * * doing, business in this state.” (Section 5366, General Code). The Department of Liquor Control, although a department of the state, is an individual entity representing the state even though its property is owned by the state. The members of the Board of Liquor Control are appointed by the Governor of the state. Section 6064-1
 
 et seq.,
 
 and particularly Section 6064-8, General Code, confer authority upon the Department of Liquor Control to “establish and maintain a state monopoly of the distribution of such liquor and the-sale thereof in packages or containers; and for such purpose to manufacture, buy, import, possess, and sell spirituous liquors in the manner provided in the Liquor Control Act * * * to borrow money Jo inaugurate and
 
 carry on its business,
 
 * * * to make and enter into leases and contracts of all descriptions within the. scope of its functions as defined in the Liquor Control Act,
 
 and to acquire and transfer title to personal property * *
 
 *.” (Italics supplied.)
 

 It is further provided by Section 6064-8, General Code, that “any and all obligations of the department
 
 *209
 
 created under authority of this paragraph shall be a charge only upon the moneys received by the department from the sale of spirituous liquor pursuant to the Liquor Control Act and its other
 
 business transactions
 
 in connection therewith, and shall not be general obligations of the state of Ohio.” (Italics supplied.)
 

 Under the provisions of Section 6064-10, G-eneral Code, these moneys are paid to the Treasurer of State
 
 as a custodian thereof.
 
 That section'provides further that:
 

 “The moneys in the custody of the Treasurer of State for the use of the Department of Liquor Control shall be known as the ‘liquor control rotary fund’ and shall be disbursed on the order of the Auditor.of State, in form prescribed by him, on the Treasurer of State as custodian as aforesaid, pursuant to vouchers or invoices signed by the Director of the Department of Liquor Control, and approved by the Director of Finance as provided in Section 154-28 of the G-eneral Code, in such form as the Auditor of State shall prescribe.”
 

 Section 6064-10, G-eneral Code, provides further that: ‘ ‘ Whenever, in the judgment of the Director of Finance, the amount in the custody of the Treasurer of State to the credit of the liquor control rotary fund is in excess of that needed to meet the maturing obligations of the department and as working capital for its further operations, the Director of Finance shall certify the amount of such excess to the Department of Liquor Control and to the Auditor of State, and the Auditor of State shall thereupon issue an order on the Treasurer of State as custodian of moneys collected under the Liquor Control Act for the amount thereby determined, to the general revenue fund of the state and a pay-in order in like amount, in the manner provided by law.”
 

 
 *210
 
 This court will take judicial notice that the official report of the state treasurer shows that there was turned over to the general revenue fund of the state of Ohio from the liquor control rotary fund, pursuant to Section 6064-10, .G-eneral Code, as profit in the operation by the department of its liquor stores last year, more than $18,000,000. This sum is in addition to the revenues collected by the board for the state of Ohio in the form of gallonage tax, the tax on beer and malt beverages, license and permit fees and sales tax collected from hotels, taverns and restaurants on sales of liquor by the drink, in a further total sum of more than $40,000,000.
 

 The relation of the state to the Department of Liquor Control and its property is not unlike the relationship of the state to the state housing authorities whose property this court has held to be taxable. In both instances, the property is not directly owned by the state but by the department or the authority over which the state exercises certain supervisory powers.
 

 Unless all “taxpayers” or “persons” are classified alike with respect to the taxation of a given type of' property, there is a violation of the equal-protection clause of the Fourteenth Amendment to the federal Constitution and the equality protection clause of Section 2, Article I of the Ohio Constitution. The personal property used in business by the Department of Liquor Control in the operation of state liquor stores must be taxed in the same manner as that of any other “taxpayer” or “person” to meet constitutional requirements, because there can be no classification of taxpayers with respect to the same type of personal property although there may be a classification of types of personal property subject to taxation. This principle is supported by the cases of
 
 State, ex rel. Struble,
 
 v.
 
 Davis et al., Tax Comm.,
 
 132 Ohio St., 555, 9 N. E.
 
 *211
 
 (2d), 684, and
 
 State, ex rel. Hostetter,
 
 v.
 
 Hunt et al., Exrs.,
 
 132 Ohio St., 568, 9 N. E. (2d), 676. Courts should construe Sections 5320 and 5366,' General Code, so as to permit their constitutional operation. There can be no constitutional justification for taxing the property of a permittee of the Department of Liquor Control, who purchases his stock of liquor from the department, and at the same time relieve from taxation the property -of the liquor store operated, perhaps next door, by the department engaged in identical private business.
 

 The Court of Appeals held that the property in question was not taxable because the state is not bound by the terms of a general statute unless the state is expressly named therein. Courts have held that a state, as a sovereignty, is not within the purview of a statute however general and comprehensive the language of the statute may be, unless the state is expressly named therein. This rule is applicable to states as governmental units, not to states when engaged in private enterprise. 49 American Jurisprudence, 235, Section 14. But contracts of the state are interpreted in the same manner as cóntracts of individuals, and the law which measures individual rights and responsibilities measures, with few exceptions, those of the state whenever it enters into an ordinary business contract. In the case of
 
 State, ex rel. Nixon,
 
 v.
 
 Merrell, Dir.,
 
 126 Ohio St., 239, 185 N.E., 56, this court in construing Section 8324, General Code, held that it applied to the state .and allowed a contractor’s lien against state property, although the state was not expressly named in the statute. It will be noted that in every case cited by the Court of Appeals in support of the rule applied by it, the courts dealt with a situation which had to do with'a governmental activity. As a general rule, statutes of limitation do not apply to a state when suing
 
 *212
 
 in a sovereign capacity, in the absence of any express provisions in the statute to the contrary, but it is significant that according to some cases the statute does apply where the state engages in business in competition with its citizens.
 
 Calloway
 
 v.
 
 Cossart,
 
 45 Ark., 81;
 
 Governor, for use of Thomas,
 
 v.
 
 Woodworth,
 
 63 Ill., 254;
 
 Brown
 
 v.
 
 Trustees of Schools,
 
 224 Ill., 184, 79 N. E. 579, 115 Am. St. Rep., 146.
 

 In the early case of
 
 State
 
 v.
 
 Exr. of Buttles,
 
 3 Ohio St., 309, this court made the observation that, “when the state appears in her courts as a suitor, to enforce her rights of property, she comes shorn of her attributes of sovereignty, as a body politic, capable of contracting, suing, and holding property, subject to those rules of justice and right, which in her sovereign character she has prescribed for the government of her people.”
 

 In the case of
 
 State, ex rel. Crabbe, Atty. Genl., v. Middletown Hydraulic Co.,
 
 114 Ohio St., 437, 151 N. E., 653, this court held:
 

 “Whatever may have been the capacity in which the state functioned in the construction of the Miami and Erie Canal for the purpose of a fiavigable highway across the state for the use of the general public, its function now, since the abandonment of the canal as a navigable highway, is that of a commercial proprietor, engaged in the operation of a great power plant for the sale of power and water to private individuals, and the rights of the state, as such proprietor, in this particular property, which have not heretofore been judicially determined, but are to be determined now for the first time, should be and will be measured by rules that are applicable to proprietors generally and applicable to like transactions between private individuals. ’ ’
 

 If there is legislative authority for the taxation of the property in question as here contended, it must
 
 *213
 
 necessarily follow that there is, by implication at least, authority to enforce the collection of such taxes by all appropriate means.
 

 When the state or a department of the state engages in private business, there is no sound reason why it should not bear the burdens of private business and contribute to the public revenues. The taxing subdivisions of the state and their taxpayers should not be obliged to furnish to such business institutions located therein and the people employed by them, free public service such as fire and police protection, the use of public streets and highways, the public schools, the public libraries and public institutions generally dependent upon local public revenues.
 

 The Tax Commissioner claims that the taxable personal property owned and used by the Department of Liquor Control is specifically exempted from taxation by Section 5351, General Code, which provides that “real or personal property belonging exclusively to
 
 the state
 
 or United States, and public property used for a public purpose, shall be exempt from taxation.” (Italics supplied.) But this court has heretofore held on numerous occasions that legislative authority to enact Section 5351, General Code, is limited by Section 2, Article XII of the Constitution, authorizing the General Assembly to exempt from taxation only “public property used exclusively for any public purpose.” No distinction is made in the Constitution between-real and personal property.
 

 In the case of
 
 Columbus Metropolitan Housing Authority
 
 v.
 
 Thatcher, Aud.,
 
 140 Ohio St., 38, 42 N. E. (2d), 437, involving the exemption of realty, this court held that public property may not be exempted from taxation unless it is used exclusively for a public purpose. Judge Turner, in the course of his opinion in that case, said:
 

 
 *214
 
 “The question before the Board of Tax Appeals was whether the property belonging to appellant
 
 is
 
 used
 
 exclusively
 
 for any public purpose. Unless the property is exclusively so • used, it may not be exempted from taxation. * * *
 

 “Appellant claims exemption under Section 5351, General Code. While this section reads, ‘Real or personal property belonging exclusively to the state or the United States, and public property used for a public purpose shall be exempt from taxation,’ yet this language is to be read in the light of the Constitution of Ohio and this court will not assume that the Legislature intended to violate any constitutional limitation. * * *
 

 ‘ ‘ That it is the duty of this court to give a statute a constitutional construction, if possible, needs no citation of authority. If we were to hold Section 5351, General Code, invalid, appellant would fail. However, we hold that Section 5351 is not invalid and that it authorizes the exemption only of public property used exclusively for any public purpose.”
 

 A like holding was made by this court in the cases of
 
 Dayton Metropolitan Housing Authority
 
 v.
 
 Evatt, Tax Commr.,
 
 143 Ohio St., 10, 18, 53 N. E. (2d), 896, 152 A. L. R., 223;
 
 Youngstown Metropolitan Housing Authority
 
 v.
 
 Evatt, Tax Commr.,
 
 143 Ohio St., 268, 55 N. E. (2d), 122; and
 
 Federal Public Housing Authority
 
 v.
 
 Guckenberger, Aud.,
 
 143 Ohio St., 251, 55 N. E. (2d), 265. In the latter case this court specifically héld:
 

 “The first part of Section 5351, General Code, exempting from taxation real or personal property belonging exclusively to the state or the United States is limited by the terms of Section 2 of Article NTT to property used exclusively for any public purpose.”
 

 In the course of his opinion in that case, Chief Justice Weygandt said:
 

 
 *215
 
 “As previously observed with reference to the latter part of this section [5351, General Code], the entire statute is based upon Section 2 of Article XII of tbe Constitution of Ohio which authorizes the passage of general laws to exempt ‘public property used exclusively for any public purposed It is fundamental that a statute may not exceed the breadth of the constitutional provision' upon which it is bottomed. The latter contains no suggestion that property may be exempted simply by virtue of exclusive ownership by the state or the United States. Not only must the property be owned by the public but it must be used exclusively for any public purpose. Hence, if it be owned exclusively by the state or the United States but not used exclusively for a public purpose, the General Assembly is without power to-exempt it. * ■ * * Therefore the effect of Section 5351 must be limited to property belonging exclusively to the state or the United States and used exclusively for any public purpose.” ,
 

 Although the judgment in the case last cited was reversed by the Supremo Court of the United States, 323 U. S., 329, 89 L. Ed., 274, 65 S. Ct.,“ 280, the construction given to Section 5351, General Code, by this court was not questioned. The Supreme Court based its reversal upon the proposition that the Congress of the United States had inherent power' to exempt United States property located in any state.
 

 Likewise, the Supreme Court of the United States has repeatedly held that state property, otheiwise immune from federal taxes, loses such immunity when used in a private enterprise. The case of
 
 Ohio
 
 v.
 
 Helvering, supra,
 
 involved the validity of a tax imposed by the federal government on the sale and distribution of intoxicating liquor by the state of Ohio through its Department of Liquor Control. The state, represent
 
 *216
 
 •ed by its able then Attorney General, John W. Bricker, claimed that the property was exempt from the tax sought to be imposed upon it because it was used by the state in performing a purely governmental function in the exercise of its’police power; and that the •state was not a “person” or a “body corporate or politic” within the definition of those terms as used in Title 26, Section 11, U. S. Code (Revised Statutes Section 3140), identical claims now made by the Attorney •General in the instant case. The United States Supreme Court denied those claims and, in the course of his opinion in that case, Mr. Justice Sutherland said:
 

 “ [The state of Ohio] seeks to invoke a principle, resulting from our dual system of government, which frequently has been announced by this court and is now firmly established, that ‘the instrumentalities, means .and operations whereby the states exert the governmental powers belonging to them are * * * exempt from taxation by the United States.’ * * * But, by the very terms of the rule, the immunity of the states from federal taxation is limited to those agencies which are of a governmental character. Whenever a state •engages in a business of a private nature it exercises nongovernmental functions, and the business, though conducted by the state, is not immune from the exercise of the power of taxation which the Constitution vests in the Congress. * * * If a state chooses to .go into the business of buying and selling commodities, its right to do so may be conceded so far as the federal Constitution is concerned; but the exercise of the right is not the performance of a governmental function, and must find its support in some authority apart from the police power. When a state enters the market place seeking customers it divests itself of its quasi-sovereignty
 
 pro
 
 tanto, and takes on the character of a trader, so far, at least, as the taxing power of the federal government is concerned.”
 

 
 *217
 
 To the same effect, see
 
 South Carolina
 
 v.
 
 United States,
 
 199 U. S., 437, 50 L. Ed., 261, 26 S. Ct., 110 (holding property of the South Carolina Liquor Dispensary System subject to federal taxation);
 
 Helvering, Commr.,
 
 v.
 
 Powers, Exr.,
 
 293 U. S., 214, 79 L. Ed., 291, 55 S. Ct., 171 (holding the incomes of trustees of the Boston elevated railway system, taken over by tffe state of Massachusetts, subject to federal taxes); and
 
 New York
 
 v.
 
 United States,
 
 326 U. S., 572, 90 L. Ed., 326, 66 S. Ct., 310 (holding sales of water from Saratoga Mineral Springs owned by the state of New York subject to federal taxes). See annotation, 163 A. L. R., 538, 542.
 

 New York sought strenuously to make the case last above cited a test case and have the court overrule the doctrine announced in
 
 South Carolina
 
 v.
 
 United States, supra.
 
 To accomplish that purpose it sought the aid of other states. The attorneys general of 45 other states, including Ohio, filed briefs
 
 amici curiae
 
 in support of the claims of New York, including the identical claims and defenses made by the appellee in the instant case, but the court in a six to two decision, one justice not participating, reaffirmed the doctrines of the former cases in that court. Mr. Justice Frankfurter wrote the majority opinion with concurring opinions written by Chief Justice Stone and Mr. Justice Rutledge.
 

 To me the analogy of these cases in determining the questions here involved is most persuasive. The property here sought to be taxed as personal property is the liquor in state warehouses and the liquor and store fixtures and equipment of the state liquor stores located throughout the state. I agree that any property of the Department of Liquor Control used by it in its function of liquor traffic control, such as its general office furniture and fixtures and other property used in connection with the granting or revoking of liquor
 
 *218
 
 permits and the collection of the various excise taxes levied against the liquor traffic, is exempt from taxation because such use is for a public purpose. But, in my judgment, the property used by the department in carrying on the business of retail sales of liquor stands in a different category.
 

 . This property owned by the state and used in a private business enterprise is not exempt from taxation and should be taxed under Section 5328, General Code, by virtue of which “all personal property located and used in business in this state shall be subject to taxation.” This court expressly so held in, the case of
 
 Hinde & Dauch Paper Co.
 
 v.
 
 Evatt, Tax Commr., supra.
 
 See, also,
 
 Board of Financial Control of Buncombe County
 
 v.
 
 Henderson County,
 
 208 N. C., 569, 181 S. E., 636, 101 A. L. R., 783;
 
 Sanitary Dist. of Chicago
 
 v.
 
 Carr, Treas.,
 
 304 Ill., 120, 136 N. E., 479;
 
 City of Eugene
 
 v.
 
 Keeney,
 
 134 Ore., 393, 293 P., 924.
 

 The reason for the tax exemption of state property is that the imposition of a tax has a tendency to interfere with the sovereign status of a state by interfering with or hindering the state in its governmental functions. . Such, for instance, would be a tax upon its state house, its public schoolhouses, its public parks or its revenues from taxes. Clearly, a tax .on a commercial business operated by a state can have no such effect, especially where the state, as here, is protected against liability beyond the revenues arising from the business itself. Where 'the reason for the invalidity of a tax fails, the invalidity itself must fail.
 

 The imposition of taxes on the increasing activities of states and other governmental units in the field of commercial enterprise is becoming a matter of sheer necessity for the protection of the public revenues. In this connection, Mr. Justice Frankfurter in the course of his opinion in the case of
 
 New York
 
 v.
 
 United States,
 
 
 *219
 

 supra,
 
 observed: “In tbe older cases, tbe emphasis was on immunity from taxation. The whole tendency of recent cases reveals a shift in emphasis to that of limitation on immunity. ’ ’
 

 Mr. Justice Rutledge in a concurring opinion in the same case said: “The shift from immunity to taxability has gone too far, and.with too much reason to sustain it, as respects both state functionaries and state functions, for backtracking to doctrines founded in philosophies of sovereignty more current and perhaps more realistic in an earlier day. Too much is, or may be, at stake for the nation to permit relieving the states of their duty to support it, financially or otherwise, when they take over increasingly the things men have been accustomed to carry on as private, and therefore taxable, enterprise.”
 

 In my opinion, the demurrer to the amended petition should have been overruled.
 

 • Weygandt, C. J., and Stewart, J., concur in the foregoing dissenting opinion.