IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| CITY OF BROOKINGS, an Oregon Municipal Corporation, | ) ) ) | |
| Plaintiff, | ) ) | TC-MD 180027R |
| v. | ) ) | |
| CURRY COUNTY ASSESSOR, | ) ) | |
| Defendant. | ) | **FINAL DECISION**[1] |

Plaintiff appeals the taxability of property identified in Defendant's records as Account R24965 (the Property) for the 2017-18 tax year. The parties filed stipulated facts along with cross-motions for summary judgment and waived oral argument.

## I. STATEMENT OF FACTS

In 1987, the South Coast Lumber Co. donated land to Plaintiff to be used for public purposes, with an eye toward the development of a golf course (Golf Course). In 1998, Plaintiff entered into a 60-year lease with the Claveran Group LLC to develop, design, build, and operate an 18-hole public golf course. In 2014, the lease was terminated, and Plaintiff entered into a new lease with Wild Rivers Golf Management LLC to operate the Golf Course. In April 2016, the lease with Wild Rivers was terminated. Plaintiff notified Defendant of the lease termination and the Property was removed from the tax rolls. Upon regaining possession of the Property, Plaintiff made significant capital improvements to the Property.

In May 2016, a Golf Course Management Agreement (the Agreement) was entered into

---

[1] This Final Decision incorporates without change the court's Decision, entered January 8, 2019. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

between Plaintiff and the Early Management Team, Inc. (EMT). The parties included a copy of the Agreement with their motions and the relevant details are as follows: EMT will run the Golf Course with responsibilities including day-to-day operations, landscaping, and maintenance of equipment. EMT has the right to create rules, standards, hours, and fees for the Golf Course. EMT will operate under a business plan that is subject to annual approval by Plaintiff. EMT must submit quarterly and annual financial reports to Plaintiff. The contract term is for 36 months with the right to two 36-month extensions.

The Agreement states that Plaintiff "grants to EMT the right to use the property that constitutes the Golf Course for the purposes set forth herein (it being understood that the right of possession remains with the [Plaintiff] and that the [Plaintiff] may enter Golf Course at any time)." EMT is entitled to the first $50,000 in taxable income from the Golf Course and 80 percent of the taxable income over that amount. EMT is required to waive the golf fees for one annual city-sponsored fundraising tournament. Plaintiff is responsible for irrigation, potable water, maintenance of roads, bridges, signage from the highway, buildings, and water systems. Plaintiff must approve any contract that exceeds $10,000 in total payments or has a term longer than one year. Plaintiff retains the right to inspect all records at any time. EMT employees are not entitled to any benefits offered by Plaintiff to city employees. Plaintiff must approve the hiring of EMT's general manager. Money remitted to Plaintiff will pay for maintenance and capital projects for the Golf Course.

Plaintiff owns the equipment that EMT will use, but EMT is required to replace the equipment as it wears out, after which EMT will own the equipment. Plaintiff will acquire 48 golf carts and EMT will reimburse Plaintiff for those carts after which EMT will own the carts. EMT is responsible for paying utility bills and must maintain all licenses, permits, and

accreditations in Plaintiff's name. Upon the Agreement's termination, EMT must transfer all contracts, licenses, rights to future payments, equipment, furniture, and fixtures to Plaintiff. EMT must indemnify Plaintiff to the fullest extent legally permitted. The Agreement labels EMT as an 'Independent Contractor' who is Plaintiff's agent to manage the Property.

At the time of the Agreement, Plaintiff had an existing contract with another entity to run a food operation within the clubhouse building. The Agreement provides that "EMT may enter into a subcontract agreement with [that entity] or successor for the continuing operation of said food service and restaurant." In October 2017, Defendant mailed a property tax notice to Plaintiff for the Property. Plaintiff asserts the notice was in error because the Property is a public golf course exempt from taxation.

## II. ANALYSIS

The issue in this case is whether Plaintiff's golf course is exempt from taxation for the 2017-18 tax year. Since the parties do not dispute that the Golf Course is intended for corporate (public) purposes as required by ORS 307.090,[2] this case will turn on whether the contract to operate the Golf Course represents a lease subject to taxation or a management agreement (license) that is not subject to taxation.

A.  *General Taxation Principles for Publicly-Owned Property*

In a typical property tax exemption appeal, "taxation is the rule and exemption from taxation is the exception." *Dove Lewis Mem. Emer. Vet. Clinic v. Dept. of Rev.*, 301 Or 423, 426, 723 P2d 320 (1986) (citation omitted). However, in this case, because the property is owned by a local government entity, exemption is the rule, and taxation is the exception. ORS 307.090; *City of Eugene v. Keeney*, 134 Or 393, 293 P 924 (1930); *Avis Rent A Car System, Inc.*

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2017.

*v. Dept. of Rev.*, 330 Or 35, 995 P2d 1163 (2000). ORS 307.110 provides an exception to the exemption allowed under ORS 307.090 when public property is leased to a taxpaying entity. ORS 307.110 provides in pertinent part:

> "Except as provided in ORS 307.120, all real and personal property of this state or any institution or department thereof or of any county or city, town or other municipal corporation or political subdivision of this state, *held under a lease or other interest or estate less than a fee simple, by any person whose real property, if any, is taxable*, except employees of the state, municipality or political subdivision as an incident to such employment, shall be subject to assessment and taxation for the assessed or specially assessed value thereof uniformly with real property of nonexempt ownerships." (Emphasis added.)

Plaintiff asserts the contract to run the public golf course is a management agreement which does not give EMT a possessory interest and does not defeat its property tax exemption. Defendant asserts the contract to run the Golf Course contains the three essential elements of a lease, and the rights reserved to Plaintiff are not sufficient to extinguish EMT's possessory interest. Thus, Defendant concludes that the contract to run the Golf Course represents a lease to a taxable entity and does not qualify for the exemption.

B.      *Leases or Other Interests vs. License*

The parties seek to analogize and distinguish three primary cases: *Sproul et. al. v. Gilbert et. al.*, 226 Or 392, 359 P2d 543 (1961), *Canteen Company of Oregon v. Dept. of Rev.*, 8 OTR 450 (1980), and *City of Cannon Beach v. Clatsop County Assessor*, 19 OTR-MD 250 (2007).

*Sproul v. Gilbert*, 226 Or 392 (1961), is the seminal case in which the Supreme Court grappled with whether a contract to graze cattle on federal land granted a possessory interest to the lessee. The court acknowledged that the state could not directly tax the federal government, however, the possessory interest could be subject to taxation. The court announced several principles when determining whether a contract to use land is a lease or a license. First, the names and relationships contained in the agreement are not binding; instead the court looks at the

document as a whole to determine the intention of the parties. *Id*. at 402-05. Second, a leasehold requires the "right of possession" but, it could be less than "exclusive possession" depending on the type of use and restrictions imposed by the contract. *Id.* at 403. Third, the meaning of the term "possession" is variable depending on the use of the property. *Id*. at 404. The court stated "[w]hen the property is amenable to many uses, the right to use it for a simple limited purpose might not constitute possession; yet, the same right to use may be regarded as possessory if the land in question is susceptible to only a limited number of uses." *Id*. at 404. The court also stated that the right to revoke "the occupant's interest is not a controlling factor in classifying it as a possessory or non-possessory interest" because leases often have some type conditions that result in a termination of interests. *Id*. at 406. Finally, the court stated:

> "If, prior to termination, the transferor can rightfully interfere with every use the occupant might make of the premises, the interest is clearly a mere license. If any interference by the transferor is prohibited, the transferee's interest is clearly a leasehold. When a case does not present either of these extremes we are required to determine whether the right to use bargained for by the transferee is substantial enough to warrant giving him the benefits (or imposing upon him the burdens) which legal tradition has attached to possessory interests. Generally the substantiality of the occupant's interest is tested by the inquiry: *Does he have sufficient control over the premises to warrant the label of possession?*"

*Id*. at 406 (emphasis added).

The court found that, although grazing permit holders did not have all rights over a property, they had a right to a major use of the land which was limited to grazing. Therefore, the grazing permits holders had a possessory interest in the land, and the interest was subject to property tax.

In this case as in *Sproul*, the relationships stated in the Agreement are not binding on the court. The focus is on the right to possession. Plaintiff urges the court to look at its possessory rights, however, *Sproul* indicates the focus should be on the possessory rights of the putative

lessee. EMT has the right to create rules, standards, hours, and fees for the Golf Course; and determine when, how and at what cost the public can enter the Property. Barring illegal discrimination EMT has the right to exclude people from the Property, at its discretion. The contract specifically provides for EMT to waive entry fees for "one city-sponsored fundraising tournament annually." (clause 7.01). That provision gives EMT possessory rights for the Property's intended use as against Plaintiff in all but one event. That provision tends to show the substantial right of possession and use of the Golf Course belongs to EMT. Although Plaintiff focuses on Plaintiff's right to enter the land at any time, its rights right to enter the land does not substantially interfere with EMT's rights to operate and possess the Golf Course. The analysis of *Sproul* is applicable and persuasive to a finding that Plaintiff gave a possessory interest in the Golf Course to EMT.

In *Canteen Company of Oregon v. Dept. of Rev.*, 8 OTR 450 (1980), the Regular Division of Tax Court analyzed a contract to run a food service operation at a county facility. The contract identified the plaintiff as "concessionaire" or "contractor" and not as a lessee. *Id.* at 453. The Plaintiff in that case asserted the contract represented a license "without a possessory interest" because of the level of control the county had over the food service operations including operating hours, menus, pricing, the location of vending machines, and even employee pay. *Id.* at 453. However, the court noted that "if the agreed-upon restrictions are observed, the plaintiff is entitled to possession of the premises even against the owner." *Id.* at 455. The court found that the lease agreement contained the three essential elements of a lease: (1) a description of the premises, (2) a provision for rent, and (3) a specified term. The court focused on the right to possession which is not subject to "mathematical precision" but rather "a matter of degree." *Id.* at 454-55. Ultimately, the court found the food operator was "entitled to possession of the premises even against the [county]." *Id.* at 455.

The contract at issue in this case has the three essential elements of a lease. It contains a description of the premises, a provision for rent, and is for a specified term. Of those elements, the rental provision may require additional comment. The rental term is unusual in that it provides for EMT to retain the first $50,000 in net profit and a small percentage after that. In light of the past performance of the Golf Course, Plaintiff may not receive any rent at all. The agreement places much of the risk, and reward on EMT, a taxpaying entity. Although that contractual term appears atypical of commercial contracts, the court does not view the provision as illusory; it is still a rental provision.

EMT must maintain insurance and indemnify Plaintiff. EMT has the right to subcontract for services: "food, beverages, utilities, concessions, entertainment, operating supplies, equipment." Further, the contract provides that EMT may enter into a "subcontract agreement" with an already existing café. That tends to indicate a lease and sublease rather than a license. The rights are more than just being allowed to use the property. EMT's possessory rights are only very narrowly limited and Plaintiff's rights are not sufficient to defeat the right to possession.

*City of Cannon Beach v. Clatsop County Assessor*, 19 OTR 250 (2007), was a Magistrate Division case involving a city contract to run a recreational vehicle (RV) park. The City paid the park manager a salary plus a small percentage of the net revenue and reimbursed the manager for expenses. The court reasoned:

> "[T]he Manager does not pay the City to use the property, and the Manager is not using the property for its own, private benefit. Instead, the City hired the Manager and *pays the Manager* to manage the property and run the business *for the City's benefit.* Money earned from the property is deposited in a City account. The court agrees with the City that the Agreement is simply a contract for services and conveys no interest in the property to the Manager. The court finds, therefore, that the property is exempt from taxation."

*Id.* at 257 (emphasis in original).

Plaintiff urges this court to follow *Cannon Beach*, but that case is distinguishable. In that case the city paid a salary to a manager to run the RV park. It gave rights of management only to run the business for the city's benefit and with the city taking all the risk. In this case, EMT has a possessory interest and the Golf Course appears to be run for the benefit of EMT. It is not guaranteed any profit and bears a substantial risk of loss.

The court's struggle to define what constitutes a lease "or estate less than a fee simple" is also exemplified in the Department of Revenue's rule, OAR 150-307-0050, which attempts to distinguish public property leases from nontaxable contracts. That rule provides in part:

> "(2)(b) "Management" or "Concession" agreements present special problems. For example, a county and a private corporation agree that the corporation will operate a county owned golf course for the county. Even though the agreement requires the corporation to meet many standards as to services, pricing, personnel etc., the corporation may still have a possessory interest if it has the exclusive right to occupy and operate the facilities without interference from the county and retains the major part of the proceeds. However, if the county is actively involved in the operation and allows the corporation a minor portion of the proceeds as compensation for its services, the corporation may be considered a mere agent or employee of the county."

The administrative rule also supports a finding that EMT has a possessory interest in the Golf Course. EMT has the exclusive right to operate the course with minimal interference from Plaintiff. EMT retains the major part of the proceeds and Plaintiff's involvement in the operation is relatively minor.

### III.  CONCLUSION

By contract, Plaintiff has granted EMT a possessory interest in the Golf Course. Thus, although Plaintiff's property is presumed to be tax exempt, Plaintiff's Agreement with EMT represents a lease to a taxable entity which is an exception to ORS 307.090. Now, therefore,

/ / /

/ / /

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of January 2019.


_____
RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.*

*This document was signed by Magistrate Richard Davis and entered on January 29, 2019.*