# IN THE OREGON TAX COURT

## CITY OF WALLA WALLA
*v.*
## DEPARTMENT OF REVENUE
(TC 2652)

Alan J. Campbell and Robert J. Grey, Preston, Thorgrimson, Ellis & Holman, Portland, represented plaintiff.

Ted E. Barbera, Senior Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for plaintiff rendered April 22, 1988.

### CARL N. BYERS, Judge.

Plaintiff is a city in the State of Washington which owns approximately 1,000 acres of forestland in Oregon. The land, consisting of two separate parcels, is part of a large watershed area which plaintiff controls and uses to provide water for its municipality. As part of the watershed, the property is carefully nurtured and protected by plaintiff. Although plaintiff will probably never harvest the merchantable timber for fear of the consequences on its water supply, nevertheless, the land and timber are subject to ad valorem property taxation in Oregon.[1]

Although plaintiff initially appealed the value of the land as well as the timber, by the time of trial plaintiff no longer wished to contest the value of the land and so informed the court. This leaves only the issue of the true cash value of the timber as of January 1, 1987, to be decided.

---

[1] Plaintiff does not qualify for exemption from property taxation since ORS 307.090 exempts the property of cities and other political subdivisions of the State of Oregon only.

Plaintiff employed a consulting forester to cruise the timber on the two tracts of land. The forester determined that there were 3,831.8 thousand board feet (MBF) of merchantable timber on the northern parcel (369 acres) and 15,705.27 MBF on the southern parcel (640 acres) for a total of 19,537 MBF. Most of the timber consists of grand firs, Douglas firs, and western larch, with some ponderosa pine and lodgepole pine. The cruiser found "some evidence" of diseases which detract from the value of the timber. He also determined that the ponderosa pine was not of high quality.

Based upon the cruise made by the consulting forester, plaintiff's appraiser testified as to the value of the timber. This was done by a residual process wherein the appraiser first ascertained log prices for the type of timber to be harvested, deducted estimated logging costs per MBF and then multiplied the difference, if any, by the applicable volume per species.

In this case, plaintiff's appraiser, in agreement with the consulting forester, testified that most of the topography involved steep slopes, much of which would require cable or high-lead logging. Also, the soil is thin and fragile in many places, with numerous rock outcroppings. This, in combination with the steepness of the terrain, would substantially increase the cost of constructing the logging roads required to harvest the timber. Plaintiff's appraiser testified that it would be necessary to construct seven miles of logging roads and that, because of the steepness, displaced earth could not be sidecast over the side of the road but would have to be hauled out. He obtained quotes for log prices which ranged from $150 per MBF to $210 per MBF. Based upon the makeup of the timber species, the appraiser found that the weighted price per thousand would be $165. Since the appraiser calculated the logging costs for most of the area at $165 per MBF, he concluded that it is not economically feasible to log the subject properties except in two relatively small and flat areas. The timber in those areas could be logged at a lesser cost per thousand and, therefore, would be economical to harvest. Based upon his various estimates, he concluded that the timber in those two areas had a true cash value of $84,000.

Defendant's appraisal was based on a 1962 timber cruise, updated by a growth study. That appraiser found a

total volume of 10,530 MBF with a total true cash value of $565,000. Although defendant's total volume was considerably less than plaintiff's, defendant arrived at a substantially higher true cash value by reason of significantly lower logging costs and a significantly higher value placed on the ponderosa pine. Although defendant's appraiser agreed that the terrain was very steep in some areas and would require cable logging, he believed that the properties could be economically logged.

In attempting to resolve the conflict between the two appraisers, the court finds little evidence by which to judge which appraiser obtained the best information with regard to the cost of forest service roads, logging costs, and log prices from the mills. These are, of course, the critical areas of conflict.[2]

As a consequence, the court is required to focus on what may otherwise be considered collateral evidence. For example, defendant's appraiser based his opinion upon the premise that the property could be clear-cut, with no costs incurred for slash disposal or replanting. The appraiser considered clear-cutting to mean leaving trees with defects to provide the means for reseeding. However, this scenario seems inconsistent and does not appear to conform with good timber practices. Moreover, the court is persuaded that the steep terrain and the nature of the soil makeup would result in higher than average logging costs. Even without regard to plaintiff's particular interest in the watershed, it appears necessary to take precautions to avoid erosion and associated problems. Finally, the court is not persuaded that log prices for ponderosa pine are as high as defendant's appraiser testified. The consulting forester's testimony that the pine in this case is not of high quality was unrebutted. Certainly the higher price is not supported by the Forest Service stumpage prices submitted by plaintiff.

---

[2] Defendant may have been able to provide more specific information except that the appraiser's break down and backup figures were excluded from evidence by reason of defendant's failure to comply with Tax Court Rule 56(C). That rule requires appraisal reports to be exchanged prior to trial. It is worth noting that " 'appraisal report' shall include all notes, documents and other material to be relied upon or referred to by the appraiser in his testimony or which is to be introduced into evidence."

Based on the above findings, the court finds that the true cash value of the timber as of January 1, 1987, was $84,000. By plaintiff's admission, the value of the land as of the same date was $73,150. Judgment will be entered in accordance with these findings. Plaintiff to recover its costs and disbursements incurred herein.