PUBLIC UTILITY DISTRICT NO. 1
OF SNOHOMISH COUNTY, WASHINGTON,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4560)

CITY OF SEATTLE,
by and through Seattle City Light,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4577)

CITY OF TACOMA,
Department of Public Utilities, Light Division,
dba Tacoma Power,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4578)

Oral argument on cross-motions for partial summary judgment was held May 6, 2003, in the courtroom of the Oregon Tax Court, Salem.

Timothy J. Sercombe, Preston Gates & Ellis, LLP filed the motion for partial summary judgment and argued the cause for Plaintiff Public Utility District No. 1 of Snohomish County, Washington (taxpayers).

James Stuart Smith and John A. Cameron, Davis Wright Tremaine LLP, filed the motion for summary judgment[1] and argued the cause for Plaintiffs City of Seattle, by and through, Seattle City Light and City of Tacoma, Department of Public Utilities, Light Division, dba Tacoma Power.

Marilyn J. Harbur and James C. Wallace, Assistant Attorneys General, Department of Justice, Salem, filed the cross-motion for summary judgment for Defendant Department of Revenue and argued the cause.

Decision for Defendant rendered January 27, 2004. Trial on other issues scheduled for October 2005.

### HENRY C. BREITHAUPT, Judge.

### I.  INTRODUCTION

This case is before the court on a stipulation of facts and cross-motions for partial summary judgment filed by the

---

[1] By agreement of the parties the motion for summary judgment was recharacterized as a motion for partial summary judgment.

parties. As outlined below, certain claims apply to all Plaintiffs and two claims apply only to the cities of Seattle and Tacoma.

## II. FACTS

Plaintiffs (referred to collectively as taxpayers and individually as taxpayer or, where appropriate, as Snohomish, Seattle, or Tacoma) are engaged in one or more aspects of the generation, transmission, and distribution of electric energy. Snohomish is a public utility district and municipal corporation formed under the laws of the State of Washington, with its principal place of business in Everett, Washington. Seattle and Tacoma are each a municipal corporation formed under the laws of the State of Washington. Both engage in electric energy operations through an administrative department. Their principal places of business are, respectively, Seattle, Washington, and Tacoma, Washington.

Each Plaintiff is a party to a Pacific Northwest AC Intertie Capacity Ownership Agreement (Capacity Agreement), in which the United States of America, acting through the Bonneville Power Administration, is the other party. Each Capacity Agreement is similar to the agreement litigated in *Power Resources Cooperative v. Dept. of Rev.*, 330 Or 24, 996 P2d 969 (2000).

Following the decision of the Oregon Supreme Court in *Power Resources*, Defendant Department of Revenue (the department) assessed, in the name of each taxpayer, a property interest related to the Capacity Agreement to which that taxpayer was a party.[2] As to each taxpayer, one assessment was made in due course on May 22, 2001, with respect to the 2001-02 property tax year.[3] In addition, on May 23, 2001, the department issued to each taxpayer a Notice of Intent to

---

[2] At this stage of the case, it has not yet become necessary to compare the Capacity Agreements in this case with those at issue in *Power Resources* or to address whether the assets being assessed are intangible contract rights or tangible assets to which the contracts relate.

[3] By "due course," the court refers to the regular annual cycle of actions and steps to be followed in the assessment of certain property under ORS 308.505 to 308.665, even though none of taxpayers submitted the annual report required by those statutes.

Assess Omitted Property for the 1995-96 through 2000-2001 property tax years.

Each taxpayer has challenged the validity of all assessment actions of the department against it. However, the parties are segregating issues for decision in a series of motions for partial summary judgment or other proceedings.

## III.   ISSUES

In these cross-motions for partial summary judgment, the parties present for decision the following issues, arising under ORS 308.505 to 308.665[4] (the central assessment statutes) as to all taxpayers:

1.   May the department make omitted property assessments of centrally assessed property for years prior to the current year?

2.   Is the department barred from making an omitted property assessment because it knew of the existence of the property in question for several years but took no action to assess it?

3.   Is the department barred from issuing omitted property assessments because they constitute untimely revocation of exemption under ORS 311.206?

4.   Even if the department is otherwise permitted to make omitted property assessments, is its assessment for the 1995-96 tax year time barred?

Taxpayers Seattle and Tacoma raise the following issues:

1.   Does each city have the benefit of ORS 307.090?

2.   Is each city the type of entity whose property is assessable by the department under the central assessment statutes?

---

[4] All references to the Oregon Revised Statutes (ORS) are to 1999.

# IV.  ANALYSIS

A.  *Authority of the Department to Make Omitted Property Assessment*

■■    The department is a creature of the legislature. It may not fail to do what the legislature has, by statute, required it to do. *Anaconda Company v. Dept. of Rev.*, 278 Or 723, 565 P2d 1084 (1977) (legislative direction to hold conference must be followed); *Preble v. Dept. of Rev*, 331 Or 320, 14 P3d 613 (2000) (failure to include statutorily required language in notice renders notice invalid). The department has the authority to carry out broad legislative directions, including the authority to promulgate rules that "flesh out" legislative directions or to carry out legislative purposes. *See* ORS 305.100; *Springfield Education Assn. v. School Dist.*, 290 Or 217, 621 P2d 547 (1980). It may not, however, on its own, create or extend a tax liability. *U. of O. Co-Oper. v. Dept. of Rev.*, 273 Or 539, 550-51, 542 P2d 900 (1975) ("[A]n administrative agency may not, by its rules, amend, alter, enlarge or limit the terms of a legislative enactment."). These principles are particularly important in the area of taxation because taxes may be imposed only by the people or their representatives in the legislature. Or Const, Art I, § 32. With those basic principles in mind, the question is whether the central assessment statutes authorized the department, in May 2001, to make assessments of omitted property applicable to earlier tax years.

The statutes must be read using the methodology of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). Therefore the terms of the statute and context in which they are found are of primary concern. Here, the overall statutory context is one in which a statewide property tax is administered at the county level of government, in most cases. *See generally* ORS chapter 308. County assessors have the responsibility to assess most property and the taxes computed, in whole or in part by reference to such assessments, are levied and collected at the county level. Each county must maintain an assessment roll. The roll is prepared each year on a strict schedule. Once prepared, changes or alterations to the roll may only be made in limited instances specified in the statutes. *See* ORS 308.242; ORS 311.205.

■ The department has several roles in the property tax system. It supervises the entire system and the actions of the county officials. ORS 306.115. The department has substantial powers, the goal for the exercise of which is uniformity and compliance with law by local officials. The department does not take over the roles of the county officials except in certain specific situations. One such situation is the task of assessing (*i.e.*, valuing) major industrial property. ORS 306.126.

■ A second instance of a direct department role is the assessment of so called "centrally assessed" properties under the central assessment statutes. For such properties, taxpayers must report information to the department and the department has the responsibility to assess the properties.[5] The results of the department's assessment process must be reported in a timely fashion to the county assessors who enter the results on the assessment roll maintained by them together with other officials, issue the appropriate tax statements and, if necessary, enforce collection of taxes levied. In cases where a company operates in several counties, the department provides each county with a calculation of its "share" of assessed value as well as information that can be used to further allocate value among the taxing districts that may exist within the county. ORS 308.635.

All parties recognize that, as to most property, the county assessor is the official permitted, and indeed required, to assess property omitted from the roll and begin the process by which tax is levied on that property. In this case, no county assessor assessed or added as omitted property the contract rights in question or the physical assets to which the contracts relate. Therefore, the authority of a county assessor to take action in respect of centrally assessed property is not before the court.

■ ■ For centrally assessed property, the department is required under ORS 308.540 to annually prepare an

---

[5] The statutes recognize that although the basic assessment of property owned by certain companies will be "central" with the department, some properties of such companies will remain locally assessed. ORS 308.517. No party has argued that the property in question here is of a type subject to local assessment under ORS 308.517.

assessment roll, described in ORS 308.585 as "tentative." The tentative roll is forwarded to the director of the department for review. At that point in the process, the only specific statutory language speaking to omitted property provides that the director of the department must "[a]ssess omitted taxable property by it assessable." ORS 308.590(1)(c). That is to occur where "it appears to the director that any real or personal property which is assessable by the department has not been assessed upon the assessment roll." ORS 308.590(3).

The department claims that the language authorizes the director to add property omitted from any prior central assessment roll to the tentative assessment roll presented to her for the current year. The fundamental argument of the department is that because addition of omitted property to a current roll is mentioned without a time limit or prohibition on retrospective additions attached, the power to add retrospectively exists to an unlimited extent.[6] The department, in effect, argues that the statutory reference to adding property to "the assessment roll," found in ORS 308.590(3) is a reference to any assessment roll reflecting her actions, including those of prior years.

The department's argument finds no direct support in the statutory language. Further, there are a number of problems created if one places the department's argument next to the statutory scheme. First, at the point in the statutory scheme of the central assessment statutes where omitted property assessments are discussed, the actions described or required are set forth in the chronological order in which, **each year**, they are to occur. At the point of director review under ORS 308.590, what has just occurred under the statutory recipe for assessment is the delivery to the director of a "tentative assessment roll" pursuant to ORS 308.585.

---

[6] The department concedes that even though, under its reading, the reach of the director is unlimited, in practice a five-year limit exists because actions of the director must be transferred by county assessors to the assessment roll from which tax bills are generated. The statute limits any such actions of a county assessor to five years. ORS 311.216. That limitation is, in the department's construction, however, a practical one rather than a legal one.

■ The language in ORS 308.590 authorizing assessments when property has been omitted from "the assessment roll" appear, therefore, to be references to the "tentative assessment roll" just delivered to the director. The department argues that the reference is to the final certified roll. Viewing that reference as being to the completed roll for the year is nonsensical, however, because the statute requires that the review process comes before the roll for the year is finalized. The entire statutory context suggests the assessment roll in question is the tentative roll.

■■ Second, reading the language as authorizing unlimited additions, in respect of prior-year omissions, to a current year roll would be at odds with the overall structure and process of central assessment. Unlike the county assessment roll where the only question is whether a property is reflected at the correct value, the central assessment system contains both a tax "base"—all centrally assessed property of the company—and an apportionment process for dividing that tax base among the various states and localities in which the centrally assessed company operates.[7] If centrally assessed property omitted in prior years is merely added to the current tax roll to accomplish assessment for prior years, accurate assessments will occur only if, in the time between the prior year and the current year, no changes in the apportionment factors have occurred. However, if apportionment facts have changed in intervening years, for example the total line mileage of track or wire or the location of any such assets, addition of property omitted in a prior year to the current roll will produce errors. Those types of errors could affect not only the company in question but also, potentially, each taxing body that derives revenue from that portion of the tax base.[8] For those reasons, the court finds the department may not make

---

[7] Unit values of centrally assessed properties are apportioned based upon, for example, the number of line miles of track or wire in the particular tax district as compared with total line miles of track or wire in all locations. *See* ORS 308.550; ORS 308.565; OAR 150-308.550(2)-(B) (relating to railroad car companies); OAR 308.550(2)-(C) (relating to electric companies) (January 2000).

[8] The error is produced where, for example the apportionment percentage to a particular tax district has declined from the year of omission to the year of addition to the roll. In that case, adding the property to the current roll short changes the district as compared to what its tax base would have been if the property was added in the year of omission.

centrally assessed omitted property assessments for prior years to the current year roll.

If the statutes do not support the addition of prior-year omissions to the current roll, do they authorize the director to add prior-year omissions to the rolls for prior years? Here, the department faces the difficulty that the statutory language refers to an addition to "the assessment roll." Even if that is somehow not a reference to the tentative roll delivered under ORS 308.585, because the word "tentative" is found in statutory context but not in actual statutory terms, there are substantial problems with concluding that it may be read as referring to completed rolls from past years. Such completed rolls do exist and are to be kept as a public record. ORS 308.615. However, the legislature made no reference to them in ORS 308.590. The terms of ORS 308.590 authorize only the addition to the central assessment roll of property omitted by the department in its annual cycle of roll preparation. That language has meaning and substance even if it does not provide retrospective authority to the director.[9]

Indeed, the department itself appears to have had the same understanding of the issue or at least the concern that, absent clear statutory authority, its retrospective omitted property assessments of centrally assessed properties were of questionable validity. That prompted the department in 2003 to initiate legislation to amend ORS 308.590 to specifically address retrospective assessment matters. Under the governing rules of statutory construction, the legislative act of amending the statute is to be taken as a legislative recognition that the authority so added "indicate[s] a change in legal rights." *See Burns v. Dept. of Rev.*, 9 OTR 469, 472 (1984). From that analysis, it is a short step to determine that, under the current facts, the proposed change to the statute indicated the authority did not already exist. Indeed, if that were not the case, that change would have no effect because, as the department has agreed, a general or overall five-year limitation already exists by reason of the provisions of ORS 311.216. *See* 17 OTR at 296 n 5.

---

[9] The meaning is that property omitted on the tentative roll for the current year can be added by the director before the roll is finalized.

Senate Bill (SB) 224, which became Oregon Laws 2003, chapter 31, was introduced at the request of the department. It amended ORS 308.590(3) by specifying that:

"If it appears to the director that any real or personal property which is assessable by the department has not been assessed upon the assessment roll, **or on any assessment roll for a year not exceeding five years prior to the last roll certified**, the director shall assess such property at the assessed value thereof."

Or Laws 2003, ch 31, § 1 (language in boldface added by 2003 amendment).

At oral argument held May 6, 2003, the court requested the parties to address the significance, if any, of that legislative act. In response, the department submitted a transcript of the committee proceedings on SB 224 without comment beyond noting that the department's witness, John Phillips, was "not an appraiser and has never worked in the centrally assessed property area." Phillips testified, in part, that:

"So there is a five-year lookback for omitted property regardless of intent or will or whatever. And so that's what's done. Now the Director of the Department of Revenue is the assessor for certain types of property in this state, particularly complex types like large industrials, and centrally-assessed properties such as utility property. And so when the assessor adds value that's discovered, in this instance the Director adds value because value is discovered on the centrally-assessed roll. The words are a little bit different from what the county assessor does to what the director does. And if you'll look at the bill on line ten, one of the things the Director is supposed to do is add omitted property. Lines 10 and 11, down below on Line 23, and then it just directs that the Director shall assess such property. And in the corrections statutes for the assessor it talks specifically about adding the property back for five years. So what our practice has been is to mirror the five-year language that the county assessors are under treating all taxpayers the same. That's our thought. **There's been discussions about whether this is open enough for us to go back an unlimited number of years or limited to maybe only just the current year.** And so rather than have that open and questionable we thought we would just

throw the question to you and say it's our thought that you probably wanted us to act in the shoes of the assessor with the same authority and to treat the taxpayers the same regardless of who the assessor is for that property. And so this bill would just say that the property can go back, the lookback is five years equal to that of the county assessor."

(Emphasis added.)

Phillips, supposedly not acquainted with central assessment, went on to say:

"Omitted property can happen on any type of property so if it's a residential property perhaps the taxpayer/homeowner has added a garage and the assessor is unaware of that, let's say there was no permit taken out. Six years later the assessor discovers this garage in a normal routine pickup and then they add the garage and then the value is added back for five years. If let's say the Department of Revenue is assessing a utility, which is typically a very complex property, and we discover a power line **or a contractual right that gives them ability to do something that's profit-making** and it's assessable under the property tax system, then we would then notify the company and say we've discovered this, we're assessing it for this much value and we're going to add it to the tax rolls back five years. Then they have a chance to appeal that in normal process."

(Emphasis added.)

He later, in part, added:

"So any given piece of property may not have as much importance as the total value of the company. So if one piece is left off it may not really shift the overall value of the company that much. But in a situation where you have **a large contractual agreement** that has a significant amount of value that was not known to the Department that would add millions of dollars to the tax rolls, then we would, if we happen upon that or are aware of it, we would add it and we have done so."

(Emphasis added.)

It appears to this court that if Phillips had no experience in cental assessment, he was nonetheless a "quick study" who had been instructed to explain to the House

Committee that contract rights might be taxable and that "[t]here's been discussions about whether this is open enough for us to go back an unlimited number of years or limited to maybe only just the current year."

Not only had there been "discussions" of this question, taxpayers in this case had stated their positions that no retrospective authority existed. That was done in advance of the foregoing testimony. The department did not mention to the legislature that this litigation was pending, nor did it bring the legislative passage and gubernatorial signature on SB 224 to the attention of this court. Although it is possible that the litigation and legislative functions of the department may not have been well coordinated, those facts are troubling to the court, especially considering that no explanation of them was contained in the department's post-argument submittal.

It also bothers the court that the fundamental premise of the department's position in this case is that its power to issue retrospective assessments was unlimited and the function of SB 224 was to limit, not create, retrospective authority. That position was taken after the subject of SB 224 came up. Before that time, the department had acknowledged that a *de facto* five-year limit existed on its power. *See* 17 OTR at 296 n 5. Given the *de facto* limit, it seems strange to the court that the department would go to the legislature to obtain a *de jure* confirmation. Its legislative activity must have been for another purpose.

■ The other statutory provisions cited by the department do not compel the conclusion the department reaches on its retrospective authority. ORS 311.205(1)(c) directs the county assessor to make changes to the assessment roll when the department directs the action, as to property assessed by the department. However, that statute creates a duty for the assessor, not authority for the department. Although that language clearly contemplates that changes to a county roll can be ordered by the department or the director, the statute contains no language authorizing the department to make retrospective changes. The statute has meaning even if limited to current year or prospective changes.

There may be areas where the department or the director may take actions beyond those specifically stated in the statutes.[10] However, the department's argument, when made with respect to a substantive creation or extension of tax liability with impact on taxpayers and the entire system of property taxation,[11] is inconsistent with the fundamentals of the Oregon tax system.

For the reasons discussed above, the court concludes that in 2001 the department did not have authority to make retrospective omitted property assessments of centrally assessed property. That conclusion makes it unnecessary to discuss the other bases for the summary judgment motion of taxpayers.

B.  *Claims of Seattle and Tacoma*

Apart from the retrospective assessments dealt with above, Seattle and Tacoma maintain they are entitled to summary judgment that their property is exempt from taxation either by reason of ORS 307.090 or because their property is not assessable under the central assessment statutes.

C.  *ORS 307.090 Claim*

ORS 307.090 provides:

"(1)  Except as provided by law, all property of the state and all public or corporate property used or intended for corporate purposes of the several counties, cities, towns, school districts, irrigation districts, drainage districts, ports, water districts, housing authorities and all other public or municipal corporations in this state, is exempt from taxation.

"(2)  Any city may agree with any school district to make payments in lieu of taxes on all property of the city located in any such school district, and which is exempt from taxation under subsection (1) of this section when such

---

[10] Examples include rules outlining processes needed to achieve statutory directives or those taken pursuant to proper interpretive rules adopted by the department.

[11] The effect of the department's reading on directly affected taxpayers is obvious. However, if the department can add omitted property without limitation, reallocations affecting all counties and subsidiary taxing districts in which the centrally assessed company operates could, as discussed above, occur.

property is outside the boundaries of the city and owned, used or operated for the production, transmission, distribution or furnishing of electric power or energy or electric service for or to the public."

■ Seattle and Tacoma contend that because, in the department's view, they are cities with property "in this state," they have the benefit of the exemption provided in ORS 307.090. The focus is properly on the phrase "in this state." As an initial matter, the court concludes the phrase cannot apply to the word "property" in subsection (1) of the statute but must qualify the phrase "the several counties, cities, towns, school districts, irrigation districts, drainage districts, ports, water districts, housing authorities and all other public or municipal corporations." That is so because Oregon does not purport to tax any property other than that in this state. ORS 307.030. That being true, there would be no need for the legislature to use "in this state" to qualify the word "property" in ORS 307.090.

Seattle and Tacoma argue that because the statute applies to cities and other entities "in" this state rather than cities "of" this state they must be covered by the exemption if they have property otherwise susceptible to taxation in Oregon. The department argues that cities "in" this state must be construed as the equivalent of cities "of" this state— that is created under the laws of this state. Under that construction, Seattle and Tacoma, not being cities created under the laws of Oregon, may not qualify for coverage under ORS 307.090.

The construction for which Seattle and Tacoma contend would result in Oregon situs property of any and all cities, wherever located, being exempt. The only way that Seattle or Tacoma are "in this state" under their construction is by reason of having property in Oregon. However, because Oregon only taxes property located in Oregon, the construction offered by Seattle and Tacoma in fact renders the words "in this state" superfluous. Under their construction, the statute would have the same meaning even if the words "in this state" were removed. Such a construction, one finding statutory language superfluous, is not favored.[12]

_____

[12] The full text of ORS 307.090 also indicates the construction offered by Seattle and Tacoma is not correct. If the terms "city" and "school district" as used

The conclusion that ORS 307.090 refers to cities created under the law of Oregon is consistent with prior decisions of this court. In *Western States Fire v. Dept. of Rev.*, 4 OTR 11 (1969), a question existed as to whether certain truck equipment owned by a Washington municipality, but temporarily in Oregon, was taxable. The court concluded that the temporary location of the property in Oregon rendered it not subject to tax given the provisions of ORS 307.030. In its analysis, however, the court concluded that the properties were beneficially owned by the municipalities and stated that, as such, it "would not have been exempt property under ORS 307.090 because they were not owned by a municipality 'in this state.'" *Western States Fire*, 4 OTR at 19. Although that statement is *dicta*, it reflects an understanding consistent with other cases.

In *City of Walla Walla v. Dept. of Rev.*, 11 OTR 28 (1988) this court dealt with the taxability of forestland located in Oregon but owned by a Washington city. In its opinion of that case, litigated as a valuation dispute, this court stated:

"Plaintiff does not qualify for exemption from property taxation since ORS 307.090 exempts the property of cities and other political subdivisions of the State of Oregon only."

*Id.* at 28 n 1.

Both of the foregoing statements from earlier cases are consistent with the more recent observations of this court regarding the scope of the term "municipal corporation" in ORS 307.090. This court has stated:

---

in subsection (1) of ORS 307.090 refer to cities and school districts formed under the constitution or laws of another state, the statute would contain a statement by the Oregon legislature that a city formed under Washington law could enter into an agreement with a school district formed under the law of Washington, or any other state, for a payment in lieu of taxes. Subsection (2) as applied in such cases would then be a meaningless provision because Oregon has no power to authorize such matters and the districts and cities of Washington have no need of such authorization from Oregon. Subsection (2) is obviously directed to the same type of city and school district as referred to in subsection (1). Subsections (1) and (2) have sensible meaning only if the cities and school districts referred to in those subsections are those formed under Oregon Law.

"One principle is that property owned by a state or local government unit is presumed *not* taxable, while private property is presumed taxable.

" 'Some things are always presumptively exempted from the operation of general tax laws, because it is reasonable to suppose they were not within the intent of the legislature in adopting them. Such is the case with property belonging to the state and its municipalities, and which is held by them for public purposes. All such property is taxable, if the state shall see fit to tax it; but to levy a tax upon it would render necessary new taxes to meet the demand of this tax, and thus the public would be taxing itself in order to raise money to pay over to itself, and no one would be benefited but the officers employed, whose compensation would go to increase the useless levy. It cannot be supposed that the legislature would ever purposely lay such a burden upon public property, and it is therefore a reasonable conclusion that, however general may be the enumeration of property for taxation, the property held by the state and by all its municipalities for public purposes was intended to be excluded, and the law will be administered as excluding it in fact, unless it is unmistakably included in the taxable property by the constitution or a statute.' Thomas M. Cooley, 2 *The Law of Taxation* § 621 (Clark A. Nichols ed., 4th ed 1924) (footnotes omitted)."

*Western Generation Agency v. Dept. of Rev.* 14 OTR 141, 146-47 (1997), *rev'd on other grounds*, 327 Or 327, 959 P2d 80 (1998) (emphasis in original).

That logic of exemptions for political subdivisions approved by this court is only sensible if the city or municipality that benefits from exemption is a subdivision of the sovereign imposing the tax. That was also the thrust of the analysis of the Oregon Supreme Court in *City of Eugene v. Keeney*, 134 Or 393, 293 P 924 (1930) in which the court stated:

"However, whether property owned by a municipal corporation is or is not subject to taxation depends upon constitutional or statutory provisions. Exemption is based upon the public policy of the state, whether expressed in its constitution or legislative enactments. The right of the legislature to make exemptions in favor of **subordinate**

**branches of the government** is a necessary adjunct of the right to tax."

*Id.* at 397 (emphasis added).

Accordingly, the court concludes that neither Seattle nor Tacoma has the benefit of ORS 307.090.

D.  *Applicability of Central Assessment Statutes to Seattle and Tacoma*

Seattle and Tacoma argue, finally, that their property is not subject to assessment under the central assessment statutes because they are municipal corporations and are not described in ORS 308.505(2). ORS 308.505(2), which defines the persons, companies, corporations, and associations whose property is taxable under the central assessment statutes, provides:[13]

> " 'Person,' 'company,' 'corporation' or 'association' includes any person, group of persons, whether organized or unorganized, firm, joint stock company, association, cooperative or mutual organization, people's utility district, joint operating agency as defined in ORS 262.005, syndicate, copartnership or corporation engaged in performing or maintaining any business or service or in selling any commodity as enumerated in ORS 308.515 whether or not such activity is pursuant to any franchise."

The question is whether that definition includes municipal corporations. Corporations are specifically included in the statutory definition. That definition's provisions are also broad in scope using the comprehensive "includes" and stating that a person can be "one or a group of persons whether organized or unorganized." *Id.*

There are several other indications that, within the general context of Oregon law and the particular context of Oregon tax law, a reference to a corporation includes a reference to municipal corporations. Article XI, section 2, of the Oregon Constitution generally contemplates that a city is a corporation in that it refers to "an act of incorporation for any

---

[13] To be taxable under the central assessment statutes, the property must also be employed in certain businesses. There is no dispute that the use of assets by Seattle and Tacoma is covered.

municipality, city or town." More specifically, Article XI, section 8, states, in relevant part:

> "The State shall never assume the debts of any county, town, **or other** corporation * * *."

(Emphasis added.)

That language clearly contemplates that counties and towns are within the legal grouping identified as "corporations."

■ ORS 307.090, which Seattle and Tacoma have claimed applies to them, refers, in part, to:

> "all public or **corporate** property used or intended for **corporate** purposes of the several * * * cities * * * and all other public or municipal corporations in this state * * *."

(Emphasis added.) That legislative language, not relevant to the earlier unsuccessful argument of the cities, reveals that a general reference to corporate property or purposes is consistent with a reference to a municipal corporation because in the emphasized language there is no qualifier to the word "corporate."

ORS 308.515(6) specifies, in relevant part, that:

> "The provisions of ORS 308.505 to 308.665 shall be construed to subject to assessment by the department the property owned, leased or occupied by a **legal entity** not yet engaged in a * * * sale of commodity * * *."

(Emphasis added.) The use of the very general words "legal entity," when considered together with the broad definitional language of ORS 308.505(2), suggest that the legislature was not making fine or narrow distinctions in its general specification of the types of persons or entities within the grasp of the central assessment statutes.

■ The statutory reference to persons and corporations under general usage should also be read as including municipal corporations. As pointed out by the U.S. Supreme Court in *Cook Co. v. U.S. ex rel Chandler,* 538 US 119, 123 S Ct 1239, 155 L Ed 2d 247, 255 (2003), since at least the time of Coke, "municipal corporations and private ones were simply two species of 'body politic and corporate,' treated alike in

terms of their legal status as persons capable of suing and being sued."

It is also appropriate to give a relatively broad construction to the coverage of the central assessment statutes so as not to inadvertently permit certain property to escape taxation. At issue in this case may be the intangible contract rights of Seattle and Tacoma. If not centrally assessed, those property rights would not be assessable at all. *Cf.* ORS 307.030. The court is of the view that the structure provided by the legislature in stating exemptions in chapter 307 and providing for assessment responsibilities in chapter 308 indicates the issue of exemption must be dealt with under ORS 307.090 and should not be a byproduct of a narrow reading of ORS 308.505(2). If an entity is entitled to exemption generally, that will not be lost by subjecting the entity to the central assessment statutes. Under those statutes, the department must give effect to any exemptions that may apply. That is clear from, for example, the language of ORS 308.590(1)(c), which permits omitted property assessment only as to "omitted **taxable** property."

## V. CONCLUSION

For the foregoing reasons, the court grants taxpayers' motion for partial summary judgment on the issue of retrospective omitted property assessment and denies the department's cross-motion for partial summary judgment on that point. Further, as to the applicability of ORS 307.090 and the central assessment statutes to Seattle and Tacoma, the court grants the department's motion for partial summary judgment and denies Seattle and Tacoma's cross-motion for partial summary judgment on those matters. Now, therefore,

IT IS ORDERED that the motion for partial summary judgment filed by Snohomish, Seattle, and Tacoma on the issue of retrospective omitted property assessment is granted, and

IT IS FURTHER ORDERED that Defendant's cross-motion for summary judgment on the issue of retrospective omitted property assessment is denied, and

IT IS FURTHER ORDERED that Defendant's motion for partial summary judgment on the issue of the applicability of ORS 307.090 and the central assessment statutes to Seattle and Tacoma is granted, and

IT IS FURTHER ORDERED that the cross-motion for partial summary judgment of Seattle and Tacoma on the issue of the applicability of ORS 307.090 and the central assessment statutes is denied. Costs to neither party.