384 October 5, 2023 No. 25

IN THE SUPREME COURT OF THE
STATE OF OREGON

D.E. SHAW RENEWABLE INVESTMENTS, LLC;
Benson Creek Windfarm, LLC;
Durbin Creek Windfarm, LLC;
Jett Creek Windfarm, LLC;
Prospector Windfarm, LLC;
and Willow Springs Windfarm, LLC,
*Plaintiffs-Appellants,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Defendant-Respondent.*
(TC 5421) (SC S069563)

On appeal from the Oregon Tax Court.*

Robert T. Manicke, Judge.

Argued and submitted May 11, 2023.

Eric J. Kodesch, Lane Powell PC, Portland, argued the cause for appellants. Bruce H. Cahn filed the briefs. Also on the briefs was Eric J. Kodesch.

Colm Moore, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent. Also on the brief were Ellen Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Flynn, Chief Justice, and Duncan, Garrett, DeHoog, Bushong, James, and Masih, Justices.**

BUSHONG, J.

The judgment of the Tax Court is affirmed.

_____

* 25 OTR 58 (2022)

** Balmer, Senior Judge, Justice pro tempore, participated in oral argument, but did not participate in the consideration or decision of this case.

**BUSHONG, J.**

In this appeal from a judgment of the Oregon Tax Court, we must decide whether the Oregon Department of Revenue erred in declining to reduce the assessed value of taxpayer's property for tax years 2018-19 and 2019-20. After persuading the department that the valuation methodology that it had used to assess taxpayer's property in 2020-21 had been flawed, taxpayer asked the department to use that corrected methodology to also reduce the assessed value of its property for the two previous tax years. The department denied that request, concluding that the statute on which taxpayer relied, ORS 306.115—which grants the department general supervisory authority over Oregon's property tax system—did not authorize the department to change its valuation opinion for the earlier tax years because another statute, ORS 308.624(4), expressly precluded the department from making that change. On appeal, the Tax Court agreed with the department, concluding that ORS 308.624(4) precluded the department from exercising its general authority under ORS 306.115 to reduce the assessed value of taxpayer's property for those earlier years. *D.E. Shaw Renewable Investments, LLC v. Dept. of Rev.*, 25 OTR 58 (2022).

Taxpayer contends on appeal to this court that the department and the Tax Court misinterpreted the applicable statutes. We disagree, and therefore affirm the Tax Court's judgment.

## I.   LEGAL OVERVIEW

An overview of the legal framework governing Oregon's system of valuing property for tax purposes will aid in understanding the statutory interpretation issues raised by taxpayer's appeal. We begin with that overview before turning to the specific arguments presented on appeal.

Under Oregon's property tax system, most property is assessed locally by county tax assessors. ORS 308.210 (assessor shall assess all taxable property within the county); *see DISH Network Corp. v. Dept. of Rev.*, 364 Or 254, 257, 434 P3d 379 (2019). However, the department itself assesses certain property—generally, property used to provide transportation, telecommunication, utilities, and other

services—through a process known as "central assessment." *See* ORS 308.515(1) (describing property subject to central assessment, based in part on the property being held or used by a company in performing or maintaining certain listed business or services, or in the selling of listed commodities); *Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 289-90, 337 P3d 768 (2014) (explaining that central assessment was devised to address problem of accurately valuing property used by a business when the property of the business is located in more than one taxing district).

For centrally assessed property, the department determines the value of the property that is to be taxed, allocates the tax-assessed value to the state, and then apportions that value among the counties where the property is located. *See* ORS 308.550 (department allocates value to Oregon); ORS 308.565 (department apportions value to counties).

A taxpayer who owns property subject to central assessment must file an annual financial statement that helps the department determine the assessed value of the property. *See* ORS 308.524 (requiring annual statement); ORS 308.525 (describing information that must be included in annual statement); ORS 308.545 (describing mode of determining assessed value of taxpayer's property). After receiving the annual statements, the department determines the value of all property subject to central assessment, prepares a tentative central assessment tax roll, and sends notices of the tentative assessment to each centrally assessed taxpayer. *See* ORS 308.585 (department shall prepare tentative central assessment roll); ORS 308.582 (department shall send notice of tentative assessment to taxpayer).

Upon receiving notice of a tentative assessment for centrally assessed property, a taxpayer may challenge the tentative assessment by requesting, on or before June 15 of the assessment year, a conference with the department's director. ORS 308.584(1), (2). The director is required to hold a conference with the taxpayer if requested and, ultimately, must issue an order on or before August 1 modifying or affirming the tentative assessment. ORS 308.584(3). ORS 308.590(1)(a) requires the director to "[r]eview, examine and correct" the tentative assessment roll for that tax

year, though the director may not increase the value of any property without first notifying the taxpayer. ORS 308.595. The department then certifies the roll and apportions the value between the counties. ORS 308.621(2). Once the roll is certified, the assessments are final and property taxes are collected by the county tax collector in the same manner as property subject to local assessment. ORS 308.540 (when central assessment roll is final); ORS 308.621(2), (4) (certification, apportionment, and collection).

After the central assessment roll is certified for a tax year, the director's ability to correct errors or make changes in the valuation and taxation of centrally assessed property is more limited. *See, e.g.*, ORS 308.624(1), (5) (director may correct clerical errors after roll is certified for any prior year that does not exceed five years); ORS 308.628 (director may add omitted property after roll is certified for any prior year that does not exceed five years). As relevant here, ORS 308.624 provides in subsection (3) that the director may correct clerical and other errors in a certified central assessment roll, and subsection (5) authorizes making such corrections for up to five years after the last roll was certified. But, notably, subsection (4) of that statute prohibits the director from correcting an error in "valuation judgment," as follows: "For purposes of this section, the director may not correct an error in valuation judgment that is an error in the department's opinion of the value of property." ORS 308.624(4).

In addition to the central assessment process described in ORS 308.505 through 308.674 summarized above, another statute, ORS 306.115(1), provides that the department "shall exercise general supervision and control over the system of property taxation throughout the state."[1] That includes the authority to "do any act or give any order *** that the department deems necessary" in administering the property tax laws so that all properties are taxed "according to the statutes *** of the State of Oregon." ORS 306.115(1). Among other things, subsection (1) of ORS

_____

[1] ORS 306.115 was last amended by the legislature in 1997, and ORS 308.624 was last amended in 2008. All references to those statutes are to the current versions except where otherwise stated.

306.115 provides that the department "may order the correction of clerical errors, errors in valuation or the correction of any other kind of error or omission in an assessment or tax roll" subject to the provisions in subsections (2) through (4).

Subsection (2) of ORS 306.115 authorizes the department to order a change or correction to the assessment for the current tax year for property "of the same class or in the same area," while subsection (3) authorizes the department to correct a "separate assessment" of a taxpayer's property for the current tax year or for either of the two preceding tax years.[2] That "separate assessment" is warranted if the department "discovers reason to correct the roll which, in its discretion, it deems necessary to conform the roll to applicable law." ORS 306.115(3).

As discussed below, the purported conflict between the department's broad authority under ORS 306.115 to correct valuation errors in general and its more limited authority under ORS 308.624 to correct errors or change past determinations of the value of centrally assessed property is at the heart of the statutory interpretation issue presented in this case. Before turning to that issue, we briefly summarize the facts and proceedings below.

## II.   FACTS AND PROCEEDINGS BELOW

Taxpayer, a limited liability company, operates electricity-generating windmills in Malheur and Baker counties.[3] Taxpayer's property is centrally assessed by the department under ORS 308.505 through 308.674. For the two tax years at issue in this case, 2018-19 and 2019-20,

---

[2] The term "separate assessment of property" used in subsection (3) of ORS 306.115 distinguishes the assessment of an individual taxpayer's property under subsection (3)—which can be changed going back two years from the current tax year—from the assessment of all property of the same class or in the same area, which under subsection (2) can only be changed for the current tax year. For further discussion of the meaning of that phrase, *see Gray v. Dept. of Rev.*, 23 OTR 220, 228 (2018) (stating that the legislature uses the term "separate assessment of property" in the tax laws to distinguish between the assessment of "a discrete item of property" and "an entire *class* or grouping of property" (emphasis in original)).

[3] This case involves multiple appellants—all limited liability companies that collectively own the subject property, which the department assesses in the name of taxpayer D.E. Shaw Renewable Investments, LLC. For ease of reference, we refer to that single taxpayer in this opinion.

taxpayer did not file the financial statements required by ORS 308.524. Each year, the department gave taxpayer notice of its tentative assessment as required by ORS 308.582. Taxpayer did not request a conference pursuant to ORS 308.584 with respect to either tentative assessment within the time permitted, so those tentative assessments became final.

The valuation reduction requested in this case followed from the events of the next tax year, 2020-21, when taxpayer filed the required financial statement and requested a conference with the director after receiving notice of the tentative assessment. At that conference, taxpayer explained that the department had overestimated the projected revenue generated by energy sales from taxpayer's windfarms and underestimated the projected expenses.[4] The director agreed to change the inputs for estimating projected revenue and expenses, thereby reducing the assessed value of taxpayer's property for tax year 2020-21 by nearly $18 million.[5]

Taxpayer then asked the department to make similar reductions to the tax-assessed value of taxpayer's property for the two previous tax years—tax years 2018-19 and 2019-20. In making that request, taxpayer cited ORS 306.115, which, as noted above, authorizes the department to make corrections—in its discretion—going back two years from the current tax year. ORS 306.115(3). The department denied taxpayer's request, explaining that, although taxpayer had requested relief for those two prior tax years under ORS 306.115, the department had "properly considered" the request to be governed by ORS 308.624. The department further explained that, because taxpayer's request had been to correct an error in the department's opinion of the value of centrally assessed property, subsection (4) of ORS 308.624 precluded it from correcting the department's past valuation opinion.

---

[4] Taxpayer contended that an "income approach" that relied on a blend of "peak" and "off-peak" rates under projected electricity sales contracts would result in a more accurate estimate of the income generated by the property. Taxpayer also explained that the projected expenses should have been higher than the department had estimated.

[5] Taxpayer proposed reducing its real market and assessed values for 2020-21 from $86,485,000 to $60,000,000. The department granted a reduction to $68,766,000.

　　　　Taxpayer appealed that decision to the Oregon Tax Court. Both parties filed cross-motions for summary judgment, framing the issue as whether the department's supervisory authority under ORS 306.115 authorized it to correct an error in valuation judgment for centrally assessed property notwithstanding the limitation in ORS 308.624(4). The Tax Court denied taxpayer's motion and granted the department's cross-motion, concluding that, although ORS 306.115 might authorize owners of centrally assessed property to seek relief, ORS 308.624(4) precluded the department from granting the specific relief that taxpayer had requested. Taxpayer appealed to this court.

## III. ANALYSIS

　　　　As framed by the Tax Court and the parties, this case presents an issue of statutory interpretation.[6] We review the Tax Court's interpretation of the relevant statutes for errors of law. ORS 305.445. We apply our traditional methodology in interpreting the statutes. *See, e.g.*, *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (court gives primary weight to statutory text in context, with appropriate additional weight accorded to any relevant legislative history); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (context includes other provisions of the same statute and other related statutes).

　　　　Also, as relevant in this case, when we are asked to resolve an apparent conflict between two statutes, we must attempt to construe the statutes in a manner that will give effect to both. ORS 174.010; *see Powers v. Quigley*, 345 Or 432, 438, 198 P3d 919 (2008). To the extent that two statutes cannot be harmonized, a more specific and later-enacted statute will control over a general earlier-enacted statute. *See* ORS 174.020(2); *Kambury v. DaimlerChrysler Corp.*, 334 Or 367, 374, 50 P3d 1163 (2002); *Balzer Mch. v. Klineline Sand & Grav.*, 271 Or 596, 601, 533 P2d 321 (1975).

---

[6] This case comes to us on appeal of the Tax Court's decision on summary judgment. In general, summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *See* TCR 47 C (standard for granting summary judgment in the Tax Court); *Tektronix, Inc. v. Dept. of Rev.*, 354 Or 531, 316 P3d 276 (2013) (applying summary judgment standard). Here, there are no factual issues in dispute; the only issue is whether the Tax Court erred in construing the statutes.

Before analyzing the relevant statutes, we briefly summarize the parties' arguments.

A.   *Parties' Arguments*

As noted, the department has authority under ORS 306.115 to correct an erroneous assessment, and that authority includes the authority to "order the correction of * * * errors in valuation." ORS 306.115(1). As in the Tax Court, taxpayer contends that that authority permits the department to make changes to the value of centrally assessed property in prior years—such as the requested corrections for tax years 2018-19 and 2019-20 at issue here—notwithstanding the prohibition in ORS 308.624(4) against correcting "an error in the department's opinion of the value of property" for centrally assessed property after the roll is certified. Taxpayer does not dispute that its request is to correct an error in the department's opinion of the value of centrally assessed property within the meaning of ORS 308.624(4). Instead, taxpayer contends that, because it requested a correction under ORS 306.115—not under ORS 308.624—the limitation in ORS 308.624(4) does not apply.

In response to that argument, the department contends that ORS 308.624 applies to any correction to centrally assessed property after the roll is certified and, therefore, subsection (4) of that statute precludes it from making the requested corrections in valuation judgment. According to the department, ORS 306.115 applies only to locally assessed property. Alternatively, the department contends that, even if ORS 306.115 applies to centrally assessed property, that statute authorizes it to make only those corrections that are otherwise authorized by law and changing the department's prior opinion of the value of centrally assessed property would not "conform the roll to applicable law" because it is prohibited by ORS 308.624(4). To the extent that the statutes conflict, the department contends that the more specific statute, ORS 308.624(4), controls over the more general statute, ORS 306.115.

We begin by examining the text and context of each statute.

B. *Text and Context*

ORS 306.115 provides, in part:

"(1) The department shall exercise general supervision and control over the system of property taxation throughout the state. *The department may do any act* or give any order to any public officer or employee *that the department deems necessary in the administration of the property tax laws so that all properties are taxed or are exempted from taxation according to the statutes and Constitutions of the State of Oregon and of the United States.* Among other acts or orders deemed necessary by the department in exercising its supervisory powers, *the department may order the correction of* clerical errors, *errors in valuation* or the correction of any other kind of error or omission in an assessment or tax roll *as provided under subsections (2) to (4)* of this section.

"* * * * *

"(3) The department may order a change or correction applicable to a separate assessment of property to the assessment or tax roll for the current tax year and for either of the two tax years immediately preceding the current tax year if for the year to which the change or correction is applicable *the department discovers reason to correct the roll which, in its discretion, it deems necessary to conform the roll to applicable law without regard to any failure to exercise a right of appeal.*"

(Emphases added.) The text of ORS 306.115 suggests, at least preliminarily, that, when the legislature granted the department broad authority over the property tax system under that provision, it intended that the department's authority would be subject to limitations provided in other statutes. Although subsection (1) does not differentiate between locally assessed and centrally assessed property,[7]

---

[7] Subsection (1) authorizes a correction in "an assessment or tax roll." The phrase "an assessment or tax roll" includes all taxable property regardless of whether it is assessed locally by a county tax assessor or centrally by the department. *See Boardman Acquisition, LLC v. Dept. of Rev.*, 361 Or 440, 447-48, 393 P3d 1147 (2017) ("the assessment and tax roll" means a full and complete record of the assessment of taxable property as of January 1 of the assessment year); ORS 308.540 (referring to the central assessment roll prepared by the department as an "assessment roll"); ORS 308.560 (same); *see also Lake Oswego Preservation Society v. City of Lake Oswego*, 360 Or 115, 379 P3d 462 (2016) ("an" may be used synonymously with "any" or as an indefinite article).

two provisions in the text suggest that the broad grant of authority set out in subsection (1) is subject to limitations provided in other statutes, as discussed next.

First, the stated purpose of giving the department "general supervision and control" over Oregon's property tax system is to ensure that "all properties are taxed or are exempted from taxation according to the statutes * * * of the State of Oregon[.]" ORS 306.115(1). Second, correcting any "errors in valuation" under subsection (1) must be accomplished "as provided under subsections (2) to (4)" of ORS 306.115. One of those referenced subsections, subsection (3), provides that the department can, in its discretion, make corrections that it "deems necessary to conform the roll to applicable law[.]"

Thus, the text of both subsections (1) and (3) of ORS 306.115 expressly refers to other applicable laws when describing the extent of the department's supervisory authority, including its authority to order the correction of an error in valuation. Even without that reference, the legislature could enact subsequent legislation to limit the department's existing authority under ORS 306.115. But the references here further confirm, at least preliminarily, that the provisions of ORS 308.624—enacted 24 years after the current version of ORS 306.115 was enacted, as noted below—might control when the department is asked to correct an error regarding centrally assessed property.[8]

---

[8] The enactment history of ORS 306.115—part of its context, *State ex rel OHSU v. Haas*, 325 Or 492, 505, 942 P2d 261 (1997)—is not particularly helpful. ORS 306.115 traces back to 1929, when the legislature granted the state tax commission (the department's predecessor) the authority to "direct and to order any county board of equalization [later a county board of property tax appeals] to raise or lower the valuation of any taxable property and to add property to the assessment list." Or Laws 1929, ch 465, § 3. That authority was later incorporated into three separate statutes. *See former* ORS 305.090 (1981), *repealed by* Or Laws 1983, ch 605, § 6; *former* ORS 306.111 (1981), *repealed by* Or Laws 1983, ch 605, § 6; ORS 311.205 (1981), *amended by* Or Laws 1983, ch 605, § 5. In 1983, however, the legislature combined those three statutes into ORS 306.115. Or Laws 1983, ch 605, §§ 1, 5-6 (enacting ORS 306.115, amending ORS 311.205 and repealing ORS 305.090 and ORS 306.111). The text of the 1983 version of ORS 306.115 is the same as the current version, except that the 1983 version provided that the department could correct a separate assessment of property only if the assessor or the taxpayer demonstrated "good and sufficient cause" for failing to exercise "the statutory right of appeal." ORS 306.115(3)(a) (1983). The "good and sufficient cause" requirement was removed from ORS 306.115(3) in 1997 and placed within ORS 305.288. *See Gray*, 23 OTR at 245-46 (tracing changes to ORS 306.115 and

We turn to the text of ORS 308.624. ORS 308.624 provides, in pertinent part:

"(1)   Following the date that an assessment roll prepared under ORS 308.505 to 308.674 is certified under ORS 308.621, the Director of the Department of Revenue may correct a clerical error, or an error or omission in the certified roll, as prescribed in this section.

"* * * * *

"(3)   Except as provided in subsection (4) of this section, the director may correct any other error or omission of any kind, including, but not limited to:

"(a)   The elimination of the assessment to one person or company of property owned or used by another person or company on the assessment date;

"(b)   The correction of a value changed on appeal;

"(c)   The correction of an error in the assessed value of property resulting from an error in the identification of a unit of property;

"(d)   An error in apportionment of assessments on the roll; and

"(e)   An error in the ratio of average maximum assessed value to average real market value determined under ORS 308.153.

"(4)   For purposes of this section, the director may not correct an error in valuation judgment that is an error in the department's opinion of the value of property.

"(5)   Corrections may be made under this section to the roll last certified, or to the certified roll for any prior year that does not exceed five years prior to the year for which the last roll was certified under ORS 308.621."

Subsection (1) states at the outset that it applies "[f]ollowing the date that an assessment roll prepared under ORS 308.505 to 308.674 is certified under ORS 308.621"—in other words, after the roll for centrally assessed property becomes final. Next, subsection (1) states that the director

_____

noting that, in 1997, the legislature vested the Magistrate Division of the Tax Court with authority to hear certain types of cases that formerly had been heard by the department under ORS 306.115 and *former* ORS 306.116 (1995), *renumbered as* ORS 305.288 (1997)).

"may correct a clerical error,[9] or an error or omission in the certified roll, as prescribed in" ORS 308.624. Using a permissive term—"may"—instead of "shall" suggests that the director has discretion to make the specified corrections, not that making those corrections is required by law. *Nibler v. Dept. of Transportation*, 338 Or 19, 26, 105 P3d 360 (2005) ("may" ordinarily denotes permission or the authority to do something).

Subsection (3) describes the types of errors or omissions—other than clerical—that the director "may correct," stating that the director may correct "any other error or omission of any kind, including but not limited to" the five types of errors described in paragraphs (3)(a) through (e). One of those types of errors—specified in paragraph (3)(b)—is the "correction of a value changed on appeal." ORS 308.624(3)(b). But importantly, subsection (3) states that the director's authority under that subsection is limited by subsection (4): "Except as provided in subsection (4) of this section, the director may correct" the listed errors or omissions. Subsection (4), in turn, states, "For purposes of this section, the director may not correct an error in valuation judgment that is an error in the department's opinion of the value of property."

Reading subsection (4) together with subsection (3), two points are readily apparent from the text alone. First, the director *may* correct a valuation error in centrally assessed property that is "changed on appeal" under paragraph (3)(b); however, under subsection (4), the director *may not* correct a valuation error that is "an error in the department's opinion," that is, a valuation that has *not* been "changed on appeal."[10] Second, because the director's correction authority set out in subsection (3) applies to any" error or omission of any kind"—including but not limited to the types of errors described in paragraphs (3)(a) through

---

[9] There is no contention in this case that taxpayer's request was to correct a "clerical error." *See* ORS 308.624(2) (defining term).

[10] ORS 308.624(3)(b) authorizes valuation changes made as a consequence of an appeal to the Oregon Tax Court. Because an appeal to the Tax Court happens after the director completes a review and the department certifies the roll, ORS 308.621(2), any correction to value made after an appeal to the Tax Court under ORS 308.584(5) would necessarily be made after the roll is already certified.

(e)—the opening clause of subsection (4)—"[f]or purposes of this section"—clarifies that the director's broad authority to correct "any *** error" in subsection (3) is limited by subsection (4). In other words, the authority granted to the director to correct "any *** error" excludes the authority to correct "an error in the department's opinion of the value of the property."

Stepping back from the specific provisions in ORS 308.624 to examine the context of that statute, we note two points. First, the legislature enacted ORS 308.624 more than two decades after the legislature combined three existing statutes into ORS 306.115. *See* Or Laws 2007, ch 616, § 7 (enacting ORS 308.624); Or Laws 1983, ch 605, §§ 1, 5-6 (enacting ORS 306.115, amending ORS 311.205 and repealing *former* ORS 305.090 (1981) and *former* ORS 306.111 (1981). Second, because ORS 308.624 applies only to centrally assessed property and only after the roll has been certified, it is more narrowly drawn than ORS 306.115, which applies to Oregon's property tax system in its entirety. That suggests, again at least preliminarily, that the legislature may have intended for the more specific, later-enacted statute to govern valuation changes in centrally assessed property.

Taxpayer contends that the preliminary clause of subsection (4) of ORS 308.624—"[f]or purposes of this section"—shows that the legislature intended for ORS 308.624 to apply only when the taxpayer asks the director to exercise its authority to correct a valuation error *pursuant to ORS 308.624*. Taxpayer reasons that, because it requested a correction under ORS 306.115—not under ORS 308.624—the limitation in subsection (4) of ORS 308.624 does not apply. In support of that contention, taxpayer points out that ORS 308.624 authorizes the director to correct errors going back five years from the last certified tax roll; by contrast, ORS 306.115(3) allows the department to go back only two years. That difference, taxpayer contends, shows that the legislature intended to provide two separate pathways for taxpayers who own centrally assessed property to seek relief.

We disagree with that textual argument. Although we agree that the two statutes specify different "look-back"

periods (five years in ORS 308.624(5), compared to two years in ORS 306.115(3)), it is likely that the legislature intended the different look-back periods to apply to different types of corrections or for different types of property, instead of providing two separate pathways by which a taxpayer who owns centrally assessed property may request a correction in the valuation of that property.

Taxpayer's interpretation would mean that the outcome would depend not on the substantive provisions of law that apply to the taxation of centrally assessed property, but on the terms of a taxpayer's request. We think it unlikely that the legislature would have intended to authorize relief for those taxpayers sophisticated enough to request correction of a valuation judgment under ORS 306.115 but deny relief to a similarly situated taxpayer requesting such a correction under ORS 308.624. Indeed, if taxpayer's interpretation of ORS 308.624(4) is correct, the limitation set out in that statute would be rendered meaningless for the first two years of the look-back period because all taxpayers could avoid that limitation by requesting relief under ORS 306.115. Again, based on the text, it strikes us as unlikely that the legislature would have intended to specify a limitation on correcting past valuation errors in ORS 308.624(4), only to allow taxpayers to circumvent that limitation by invoking ORS 306.115.

Taxpayer cites another statute, ORS 311.205, as important context for its interpretation of ORS 308.624. ORS 311.205 authorizes the local assessment official to correct clerical and other errors in local property tax assessments and tax rolls.[11] Taxpayer characterizes ORS 308.624 as the central assessment "corollary" of ORS 311.205, and

---

[11] ORS 311.205(1)(b) authorizes the local assessment official to change its opinion of the value of locally assessed property for prior tax years if the change is the result of an appeal to the Tax Court. That statute provides, in part:

"(A) The officer [in charge of the roll] may correct an error in valuation judgment at any time in any account when an appeal has been filed in the tax court alleging that the value on the roll is incorrect, if the correction results in the reduction in a tax owed on the account.

"* * * * *

"(D) For purposes of this paragraph, an error in valuation judgment is one in which the assessor or the department would arrive at a different opinion of value."

notes that the Tax Court and this court have addressed the merits of petitions invoking the department's supervisory authority under ORS 306.115 to correct valuation errors for locally assessed property in prior tax years without addressing the limitation on correcting errors in valuation judgment in ORS 311.205(1)(b)(A) and (D). *See Oakmont, LLC v. Dept. of Rev.*, 359 Or 779, 377 P3d 523 (2016) (concluding that the department had authority under ORS 306.115 to consider locally assessed taxpayer's petition to correct valuation); *Willamette Estates II, LLC v. Dept. of Rev.*, 357 Or 113, 346 P3d 1207 (2015) (holding that assessor could properly petition the department under ORS 306.115 to correct errors in valuing taxpayer's land). Thus, taxpayer reasons, ORS 306.115 must provide an independent pathway for taxpayers owning centrally assessed property to seek relief despite the limitation in ORS 308.624(4), just as it provides a pathway for taxpayers owning locally assessed property to seek relief despite the limitation in ORS 311.205(1)(b).

We disagree with that reasoning. Although the statutes are parallel in some respects, there are some important textual differences. ORS 311.205 prohibits the local assessment official from independently correcting errors in valuation judgment. *Clackamas Cty Assessor v. Village at Main St. Phase II*, 349 Or 330, 332, 245 P3d 81 (2010) ("Once a tax assessor has determined the value of property and listed it on the assessment roll, the assessor may not correct the value listed on the assessment roll merely because he or she 'would [now] arrive at a different opinion of value.'" (Quoting ORS 311.205(1)(b) (2005) (brackets in *Village at Main St. Phase II*).)). Although the local assessment official's authority is limited, the department's authority is not. Paragraph (1)(d) of ORS 311.205 expressly requires the local officer in charge of the tax roll to "make any change ordered by the * * * department under ORS 305.288 *or ORS 306.115*." (Emphasis added.) Thus, the text of ORS 311.205 shows that the legislature intended to authorize the department to exercise its supervisory authority over the state's property tax system under ORS 306.115 to order corrections to local tax rolls that a local assessment official is not authorized to make.

By contrast, the prohibition in ORS 308.624(4) applies directly to the director and contains no reference to the department's supervisory authority over the property tax system in ORS 306.115. *Compare* ORS 311.205(1)(d) (assessment official "shall make any change ordered by *** the department under *** ORS 306.115"), *with* ORS 308.624(4) (prohibiting the director from correcting errors in valuation judgment). The absence of any reference to ORS 306.115 in ORS 308.624 makes sense because, although the department might need to exercise its supervisory authority over local assessment officials to ensure that they are complying with the law, the department does not need to exercise supervisory authority over itself. The department itself is acting as the assessor for centrally assessed property; the prohibition on correcting errors in valuation judgment in ORS 308.624(4) thus parallels the prohibition on local assessment officials correcting errors in valuation judgment in ORS 311.205. The fact that the legislature authorized the department to exercise its supervisory authority to correct errors in valuation judgment by local assessment officials in ORS 311.205 does not mean that the legislature intended to authorize the department to exercise authority under ORS 306.115 to change the department's own opinion of the value of taxpayer's centrally assessed property after the central assessment tax roll is certified.

We turn to the legislative history to see whether it sheds any additional light on the legislature's intent.

C.  *Legislative History*

The legislative history of ORS 306.115 is not helpful on the issue presented in this case—the legislature was primarily concerned with local assessment—and nothing is added by a detailed discussion.[12] We turn, then, to the legislative history of ORS 308.624.

---

[12] The legislative history of ORS 306.115 reveals that the legislature's primary goal in combining three earlier statutes into ORS 306.115 by enacting Senate Bill (SB) 68 (1983) was to prevent locally assessed taxpayers from circumventing the local review process. Tape Recording, House Committee on Revenue and School Finance, SB 68, July 6, 1983, Tape 333, Side A (statement of Larry Dixon, Department of Revenue); Staff Measure Analysis, Senate Committee on Revenue, SB 68, July 6, 1983; *see generally Sandahl v. Dept. of Rev.*, 9 OTR 251 (1982) (holding that the taxpayer was permitted to appeal to Tax Court notwithstanding his failure to first pursue the local review process). The legislative history includes only one purported mention of property subject to central

The department originally proposed ORS 308.624 as section 7 of House Bill (HB) 2239 (2007), as part of the department's effort to clarify procedures for reviewing and correcting its central assessment rolls. The department's representative, Phillips, explained during a public hearing before the House Committee on Revenue that section 7 was new and concerned changes made to historic or past rolls— meaning changes in prior years after the tax rolls had been certified—and that the goal was to make the process for correcting centrally assessed rolls for prior tax years parallel to the existing process in ORS 311.205 for correcting errors in the local assessment rolls for prior years. Audio Recording, House Committee on Revenue, HB 2239, Feb 6, 2007, at 23:30 (statement of John Phillips, Department of Revenue), https://olis.oregonlegislature.gov (accessed Sept 27, 2023). Phillips went on to explain that, in addition to clerical errors, ORS 308.624 permits the director to correct "other kinds of errors," including value when an appeal has been filed with the Oregon Tax Court. Audio Recording, House Committee on Revenue, HB 2239, Feb 6, 2007, at 24:20, https://olis.oregonlegislature.gov (accessed Sept 27, 2023). In response to a question from Chair Barnhart regarding whether that section would give the department new authority or responsibility, Phillips stated:

> "Mr. Chair it's an attempt to simply flesh out and restate what already exists. We found that in the confusion between the kinds of rolls that are being corrected, that we kept and like a couple of years ago we added some provisions to flesh this out a little bit but it still was in the wrong section * * *."

Audio Recording, House Committee on Revenue , HB 2239, Feb 6, 2007, at 24:50, https://olis.oregonlegislature.gov (accessed Sept 27, 2023).

From Phillips's statement that the bill merely "restate[d] what already exists," taxpayer reasons that, because the department did not have any *other* authority

---

assessment, which is not included in the archival record, but was in a transcript provided by the department's counsel from their files: At one legislative committee hearing, a legislator reportedly asked whether the bill had been introduced to "deal with the situations arising out of utilities challenging the assessed values." The department's representative at that hearing responded that he "[didn't] believe it [was]."

before 2007 to correct centrally assessed property tax rolls for prior years, it must have had the existing authority to do so under ORS 306.115. And because the 2007 legislation was intended to make procedural or housekeeping changes—not substantive changes—to existing law, the legislation did not change the department's existing authority under ORS 306.115. That is one way to understand the legislative history, but not the only way.

Taxpayer's argument assumes that the department in fact had authority before 2007 to correct centrally assessed tax rolls for prior years.[13] But the suggestion by Phillips that section 7 only restated "what already exists" seems incorrect. Before 2007, the central assessment statutes did not expressly authorize the department to make corrections outside of the annual director's review and conference process for the current tax year, *see generally* ORS 308.505 through 308.665 (2005), and the Tax Court had interpreted ORS 308.590 to *preclude* the department from correcting centrally assessed tax rolls for prior tax years, *see PUD No. 1 of Snohomish County v. Dept. of Rev.*, 17 OTR 290, 297-99 (2004) (concluding that ORS 308.590 did not authorize retrospective corrections to a certified central assessment roll because the text authorizing the department to make corrections referred only to the *tentative* roll prepared during the present tax year, not to rolls that had been *certified* in prior years).[14] Therefore, by authorizing the department to

---

[13] Taxpayer contends that its interpretation is supported by our decision in *Northwest Natural Gas Co. v. Dept. of Rev.*, 347 Or 536, 226 P3d 28 (2010). In that case, the taxpayer challenged the department's failure to apply the business inventory exemption statute, ORS 307.400, to its centrally assessed property. We noted that the taxpayer had petitioned for relief for tax years prior to 2007 "pursuant to ORS 306.115[,]" *id.* at 541, and both the Tax Court and this court addressed the merits of the taxpayer's claim. However, the department's contention in that case was that the exemption in ORS 307.400 did not apply to centrally assessed property; the department did not contend that ORS 306.115 did not authorize it to grant relief. Because the source of the department's authority to consider the merits of the taxpayer's claim to an exemption was not at issue, our decision in *Northwest Natural Gas Co.* does not stand for the proposition that, before 2007, ORS 306.115 authorized the department to grant relief for prior tax years for all centrally assessed property. *See Parks v. Farmers Ins. Co.*, 347 Or 374, 384, 227 P3d 1127 (2009) (noting that the court's silence "simply reflects that, heretofore, this court has had no reason to consider the issue").

[14] The issue in *PUD No. 1 of Snohomish County* was whether the department had any authority to *increase* a centrally assessed taxpayer's property taxes for prior years by including property that had been omitted from the original

correct, in some circumstances, the centrally assessed tax roll certified in prior years, section 7 of HB 2239 expanded the department's existing authority. We assume the legislature had a correct understanding of existing law.[15]

Moreover, it is not clear that the 2007 legislation was intended to make only nonsubstantive changes to the law. Although Phillips's testimony is somewhat ambiguous, he did state that HB 2239 was "an attempt to flesh out" the department's existing authority. Thus, another way to understand that testimony is that the department's authority to correct centrally assessed tax rolls for the *current* tax year "already exists," and giving the department the additional authority to correct those rolls for prior years under some circumstances was part of the effort to "flesh out" the existing authority.

The legislative history also includes some discussion about the initial clause of what became ORS 308.624(4)—the "[f]or purposes of this section" clause—that taxpayer contends is significant. As originally proposed, that clause was contained in the second sentence of subsection (4), not the first:

> "The director may not correct an error in valuation judgment. *For purposes of this section*, an error in valuation judgment is an error in the department's opinion of the value of property."

HB 2239 (2007), § 7(4) (introduced bill) (emphasis added).

The location of that clause was moved at the department's request. *See* Exhibit 13, House Committee on Revenue, HB 2239, Feb 6, 2007 (letter of John Phillips, Department of Revenue). The department's letter request suggested moving that clause to the beginning of the first sentence, because, as originally introduced, the provision

---

assessment. The Tax Court held that, before the law governing "omitted property" was amended by Or Laws 2003, ch 31, § 1, the department "did not have authority to make retrospective omitted property assessments of centrally assessed property." *PUD No. 1 of Snohomish County,* 17 OTR at 303.

[15] As there is no evidence the legislature had relied on Phillips's misstatement, it is not entitled to any weight. *See State v. Stark*, 354 Or 1, 15 n 9, 307 P3d 418 (2013) ("We assume that the legislature had a correct understanding of the existing law, and the legislative history does not establish that the legislature relied on [a witness's] misstatement.").

"could be interpreted to limit the director's authority under a totally separate statute and chapter." The "dash one" amendments to House Bill 2239 incorporated the department's requested amendment:

> "For purposes of this section, the director may not correct an error in valuation judgment that is an error in the department's opinion of the value of property."

HB 2239 (2007), -1 amendments (Feb 23, 2007).

Taxpayer understands that change to be significant. Taxpayer contends that the "totally separate statute and chapter" mentioned in the department's letter was a reference to ORS 306.115. According to taxpayer, that reference confirms that (1) the department believed that it already had authority under ORS 306.115 to correct valuation errors in the tax rolls for centrally assessed property for prior years; and (2) the "[f]or purposes of this section" clause was moved to the first sentence to preserve that existing authority. Again, we agree that the legislative history *could* be read consistently with that understanding of the legislature's intent, but we disagree that the legislative history is conclusive in that respect, for several reasons.

First, the letter's reference to a "totally separate statute and chapter" does not mention ORS 306.115. Thus, the letter could have been referring to the department's existing authority to correct valuation errors in the tax rolls for centrally assessed property for the current tax year. Moving the "[f]or purposes of this section" clause to the first sentence would preserve that existing authority. Conversely, leaving that clause in the second sentence as originally proposed could have been interpreted to preclude the department from making such a correction even in the current tax year. Similarly, the reference to a "totally separate statute and chapter" could have been referring to the department's existing authority to correct valuation errors for locally assessed property under ORS 311.205(1)(d). Again, moving the preliminary clause to the first sentence would preserve that existing authority, while leaving it in the second sentence could have been interpreted to preclude the department from correcting past valuation errors for locally assessed property.

Second, taxpayer's argument again presumes that the department thought it had the authority before the 2007 legislation to correct valuation errors in the tax rolls for centrally assessed property for prior years, and that ORS 306.115 was the source of that existing authority. But taxpayer's presumption is flawed because, as noted above, the Tax Court had determined that the department did *not* have any authority before the 2007 legislation to correct the tax rolls for centrally assessed property for prior tax years.

Finally, nothing in the later legislative discussions about the amendment moving the "[f]or purposes of this section" clause to the first sentence of subsection (4) supports taxpayer's argument regarding the significance of that change.[16] A subsequent discussion of that amendment characterized the change as merely a clarifying rewrite. Audio Recording, House Committee on Revenue, HB 2239, Feb 20, 2007, at 13:10 (testimony of Chair Barnhart, describing the changes as a "rewrite" so that "the language works better"), https://olis.oregonlegislature.gov (accessed Sept 27, 2023).[17]

In sum, nothing in the legislative history of ORS 308.624—including the history of the 2007 amendment to subsection (4)—clearly reveals an intent to authorize the department to change its valuation opinion for prior years at a taxpayer's request when that relief is specifically precluded by subsection (4).

Ultimately, the best evidence of the legislature's intent is the text of the statutes that the legislature enacted. *See Gaines*, 346 Or at 173 (stating that, where "the text of a statute is truly capable of having only one meaning, no weight

---

[16] At a work session of the House Committee on Revenue, a representative from the Legislative Revenue Office testified that the "[f]or purposes of this section" clause was moved to the beginning of the first sentence to avoid "prohibiting the department from correcting an error in the opinion of its value" and that the amendment was needed "or the department would not have the ability any longer to change its value." Audio Recording, House Committee on Revenue, HB 2239, Feb 20, 2007, at 11:35, https://olis.oregonlegislature.gov (accessed Sept 27, 2023).

[17] The House Committee on Revenue adopted the amendment and voted to pass the bill to the full House, which also passed it. The Senate also passed the bill in that form, following a committee process that involved no significant discussion. Audio Recording, Senate Committee on Finance and Revenue, HB 2239, May 22, 2007, at 23:22, https://olis.oregonlegislature.gov (accessed Sept 27, 2023). Ultimately, then, the amendment to ORS 308.624 was enacted in what is now its current form. Or Laws 2007, ch 616, § 7.

can be given to legislative history that suggests—or even confirms—that legislators intended something different"). As explained earlier, the statutory text and context point to the following conclusions: (1) in ORS 308.624(4), the legislature intended to preclude the department from changing its "opinion of value" of centrally assessed property for prior tax years, except when a change is required by the results of an appeal to the Tax Court; and (2) in ORS 306.115, the legislature intended the department's broad authority over the state's property tax system to be subject to limitations provided in other, more specific statutes, including the limitation subsequently adopted in ORS 308.624(4).[18] Nothing in the legislative history convinces us that the legislature had a different intent when it enacted (and amended) those statutes.

In short, the department's general authority under ORS 306.115(1) to correct errors in valuation must give way to the specific prohibition in ORS 308.624(4). Any conflict between the two statutes is reconcilable because nothing in ORS 306.115 compels the director to correct errors in valuation in a certified central assessment roll. *See Carlson v. Myers*, 327 Or 213, 226, 959 P2d 31 (1998) (this court avoids interpreting statutes in a manner that would produce an irreconcilable conflict). To the extent they conflict, the more specific statute—ORS 308.624(4)—will control over the more general. ORS 174.020(2); *see Powers*, 345 Or at 438 (so noting).

Construing the statutes in a manner that gives effect to each one, as required by ORS 174.010, means that the department's broad authority under ORS 306.115 is subject to limitations in other, more specific, statutes, including ORS 308.624(4). Construing the broad grant of authority under ORS 306.115 as an exception to the prohibition in ORS 308.624(4) or an alternative pathway to obtain relief that is expressly precluded by ORS 308.624(4) as taxpayer contends would effectively nullify ORS 308.624(4)—at least for the most recent two-year look back period—because the

---

[18] Of course, the legislature that adopted ORS 306.115 in 1983 could not preclude the 2007 legislature from limiting the scope of the department's authority under the earlier statute even if ORS 306.115 did not expressly reference other statutes and applicable law.

department's authority under ORS 306.115 would always supersede the prohibition contained in ORS 308.624(4). Conversely, if the authority under ORS 306.115 is subject to the limitations in ORS 308.624(4)—or, stated differently, if ORS 308.624(4) is treated as an exception to the broad authority granted under ORS 306.115—both statutes will have the fullest legal effect. Such an interpretation would preclude the department from relying on ORS 306.115 to correct errors in valuation in a certified central assessment roll for prior years, but its broad authority over the state property tax system would remain intact.

Taxpayer is in the position of requesting relief under ORS 306.115 for tax years 2018-19 and 2019-20 only because it did not submit financial statements for those years as required by ORS 308.524, and it did not request a conference with the director under ORS 308.584 to challenge the department's valuation opinion before the tentative assessments for those years became final. We agree with the Tax Court that ORS 308.624(4) precluded the department from retroactively changing its opinion of the value of taxpayer's property in the certified central assessment rolls for those earlier tax years.[19]

## IV.   CONCLUSION

For the foregoing reasons, we conclude that ORS 308.624(4) precludes the department from changing its valuation of taxpayer's centrally assessed property for tax years 2018-19 and 2019-20.

The judgment of the Tax Court is affirmed.

---

[19] Based on that conclusion, we need not decide whether ORS 306.115 only applies to correcting valuation errors for locally assessed property, as the department contends.